*175
 
 GASKINS, J.
 

 LThe plaintiffs, Mae Francis Washington Smith and John Washington, on behalf of the interdict, Henry Gene Washington, appeal from a trial court ruling denying their motion for summary judgment and granting summary judgment in favor of Greenwich Insurance Company, dismissing the plaintiffs’ claims. For the following reasons, we affirm the trial court judgment.
 

 FACTS
 

 This matter arises from a tragic motor vehicle accident in DeSoto Parish. On December 7, 2006, Mike Miles McCauley was employed as a truck driver for Steve Kent Trucking, Inc. At approximately 11:00 a.m. that day, while driving a company 18-wheeler on Highway 5 in DeSoto Parish,' during the course and scope of his employment, Mr. McCauley dropped his cell phone onto the floorboard of the truck. He bent over to retrieve it and crossed the center line of the highway. Mr. McCauley then overeorrected and lost control of the vehicle, which turned over and slid on its side. The truck turned over onto a vehicle traveling in the opposite direction. That vehicle was driven by Henry Washington. Mr. Washington’s vehicle was pushed from the roadway into a small body of water. While continuing to slide on its side, Mr. McCauley’s truck also collided with a car driven by Allan C. Richard, which was traveling several car lengths behind Mr. Washington. Mr. Richard was killed instantly. Mr. Washington suffered numerous serious injuries which left him permanently incapacitated.
 

 On January 12, 2007, Mr. Washington and John Washington, on behalf of Mr. Washington, filed a suit for damages for Mr. Washington’s 12injuries. Named as defendants were Mr. McCauley, Steve Kent Trucking, Inc., and its insurer, Greenwich Insurance Company (“Greenwich”). Among his injuries, Mr. Washington alleged that he suffered facial fractures, a fractured jaw, brain damage, multiple fractures of both arms, loss of use of his left arm due to a severed artery and crush fractures, a broken left hip, aspirated teeth into his lungs, contusions to all his internal organs, internal bleeding, and cardiac arrest. Mr. Washington claimed that he has already had four major surgeries and more will be required. He asserted that he is totally and permanently disabled. He sought to recover for past and future mental and physical pain and suffering; past and future physical disability and physical impairment; past, present and future loss of enjoyment of life; past, present and future medical expenses; loss of economic opportunity and numerous other items of damages.
 

 Mr. Washington was interdicted and a supplemental and amended petition was filed by Mae Francis Washington Smith and John Washington, the curatrix and undercurator for Mr. Washington. State Farm Mutual Automobile Insurance Company (“State Farm”), Mr. Washington’s uninsured/underinsured motorist carrier, was added as a defendant. Mr. Washington claimed that the Greenwich policy provided coverage for him alone in the amount of $5 million, that he had future medical expenses more than $5 million, and that he had already incurred $1 million in medical expenses.
 

 |sMr. Washington’s employer and its workers’ compensation insurer, Louisiana Workers’ Compensation Corporation, filed a petition of intervention to recover for amounts paid in workers’ compensation.
 

 On September 18, 2007, the trial court entered a judgment allowing Ms. Smith to settle claims arising from the accident for $4.5 million. Greenwich paid $4 million
 
 *176
 
 and Steve Kent Trucking, Inc., paid $500,000. The plaintiffs reserved the right to claim an additional $1 million in insurance coverage from Greenwich and $500,000 in coverage from State Farm. Ms. Smith was authorized to settle the workers’ compensation intervention claim. Also in September 2007, an order was signed by the trial court dismissing the claims of the plaintiffs against Mr. McCau-ley, Steve Kent Trucking, Inc., and the intervenor, Louisiana Workers’ Compensation Corporation, reserving the plaintiffs’ rights against Greenwich and State Farm. On November 21, 2007, a judgment was entered allowing the plaintiffs to settle with State Farm for $500,000. At that point, only the plaintiffs’ claim against Greenwich for an additional $1 million in coverage remained.
 

 Greenwich filed a motion for summary judgment claiming that it had a policy limit of $5 million per accident and that it paid $4 million to Mr. Washington and $1 million to the family of Mr. Richard. Greenwich contended that there was one accident in this case, as defined in its policy, and the company had paid its policy limits and should be dismissed from the suit.
 

 |4The plaintiffs filed a motion for partial summary judgment on the issue of insurance coverage, arguing that Mr. Washington is entitled to recover another $1 million from Greenwich under the terms of the insurance policy. The plaintiffs argued that the policy sets limits at $5 million for “one accident or loss.” They maintained that there were two separate losses in this matter, arguing that Mr. Richard’s family had a wrongful death and survival action, while the plaintiffs were asserting a tort action under La. C.C. art. 2815. They also claimed that there were two separate accidents.
 

 A hearing was held on the motions for summary judgment on February 22, 2010. Greenwich argued that the policy specified a $5 million “per accident” limit and that an accident is defined as “the continuous or repeated exposure to the same conditions resulting in bodily injury.” Greenwich also contended that the limit was a combined single limit or CSL.
 

 On February 25, 2010, the trial court entered judgment granting Greenwich’s motion for summary judgment and denying that of the plaintiffs. The court reasoned that there was one accident in this matter, although there were two collisions. The liability of Greenwich was limited to $5 million per accident and the company had paid the policy limits by settling with Mr. Washington for $4 million and Mr. Richard’s survivors for $1 million. The plaintiffs appealed.
 

 COVERAGE LIMITS
 

 On appeal, the plaintiffs argue that the trial court erred in granting summary judgment in favor of Greenwich. The plaintiffs argue that the | slanguage of the Greenwich policy provides separate coverage for Mr. Washington and Mr. Richard, extending $5 million in coverage to each of them. According to the plaintiffs, the definitions of “accident” and “loss” used in the policy support their argument. The plaintiffs urge that, under the language of the policy, “accident” and “loss” are different and alternative bases of coverage. They also maintain that Mr. Washington and Mr. Richard each sustained separate losses and the policy limit is $5 million per loss. They contend that the $5 million policy limit is to be applied to each person who suffers bodily injury or death, not all such persons.
 

 The plaintiffs also assert, in the alternative, that there were two accidents in this case. They claim that the first accident occurred when the vehicle driven by Mr. McCauley hit Mr. Washington and the sec
 
 *177
 
 ond occurred when the vehicle collided with Mr. Richard. Therefore, the policy limits should be construed to provide $5 million in coverage to Mr. Washington regardless of what was paid to Mr. Richard’s survivors.
 

 Legal Principles
 

 Appellate courts review summary judgments
 
 de novo
 
 under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate.
 
 Palmer v. Martinez,
 
 45,318 (La.App.2d Cir.7/21/10), 42 So.3d 1147. A motion for summary judgment is a procedural device used when there is no genuine issue of material fact.
 
 In re Clement,
 
 45,454 (La.App.2d Cir.8/11/10), 46 So.3d 804. The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action allowed by law. La. C.C.P. art. 966(A)(2). A | ^motion for summary judgment will be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that [the] mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B);
 
 Palmer v. Martinez, supra.
 

 On the motion for summary judgment, the burden of proof is on the mover. La. C.C.P. art. 966. However, if the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, then the mover may merely point out to the court the absence of factual support for one or more elements essential to the plaintiffs claim. The burden then shifts to the plaintiff to present evidence demonstrating that genuine issues of material fact remain. La. C.C.P. art. 966(C)(2);
 
 In re Clement, supra.
 
 If the plaintiff fails to meet this burden, there is no genuine issue of material fact and the mover is entitled to summary judgment.
 
 In re Clement, supra.
 

 Interpretation of an insurance policy is usually a legal question that can be properly resolved by means of a motion for summary judgment. When determining whether a policy affords coverage for an incident, the insured bears the burden of proving that the incident falls within the policy’s terms. Summary judgment declaring a lack of coverage under an insurance policy may be rendered only if there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded.
 
 Palmer v. Martinez, supra.
 

 |7An insurance policy is a contract between the insured and the insurer and has the effect of law between the parties. Because an insurance policy is a contract, the rules established for the construction of written instruments apply to contracts of insurance. The parties’ intent, as reflected by the words of an insurance policy, determines the extent of coverage, and the intent is to be determined in accordance with the plain, ordinary, and popular sense of the language used in the policy, unless the words have acquired a technical meaning. La. C.C. art. 2047. If the language in an insurance contract is clear and unambiguous, the agreement must be enforced as written and a reasonable interpretation consistent with the obvious meaning and intent of the policy must be given. The determination of whether a contract is clear or ambiguous is a question of law.
 
 Palmer v. Martinez, supra.
 

 An insurance policy should not be interpreted in an unreasonable or strained manner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or so as to
 
 *178
 
 achieve an absurd conclusion.
 
 Louisiana Insurance Guaranty Association v. Interstate Fire & Casualty Company,
 
 98-0911 (La.1/14/94), 630 So.2d 759. The policy should be construed as a whole and one portion thereof should not be construed separately at the expense of disregarding another. If, after applying the general rules of construction, an ambiguity remains, the ambiguous provision is to be construed against the insurer who issued the policy and in favor of the insured. See
 
 Louisiana Insurance Guaranty Association v. Interstate Fire & Casualty Company, supra.
 

 | «Policy Provisions
 

 The determination of the issues raised in this case turns upon a reading of the Greenwich insurance policy applicable here. The policy issued by Greenwich to Steve Kent Trucking, Inc., provided business automobile coverage. Regarding the limits of coverage, the declarations page of the policy provides that the most the company will pay for any one accident or loss is “$5,000,000 CSL.” The liability portion of the policy provides in pertinent part:
 

 SECTION II — LIABILITY COVERAGE
 

 A. Coverage
 

 We will pay all sums an “insured” legally must pay as damages because of “bodily injury” or “property damage” to which this insurance applies, caused by an “accident” and resulting from the ownership, maintenance or use of a covered “auto”.
 

 [[Image here]]
 

 C. Limit of Insurance
 

 Regardless of the number of covered “autos”, “insureds”, premiums paid, claims made or vehicles involved in the “accident”, the most we will pay for the total of all damages and “covered pollution cost or expense” combined, resulting from any one “accident” is the Limit of Insurance for Liability Coverage shown in the Declarations.
 

 All “bodily injury”, “property damage” and “covered pollution cost or expense” resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one “accident”.
 

 No one will be entitled to receive duplicate payments for the same elements of “loss” under this Coverage Form and any Medical Payments Coverage Endorsement, Uninsured Motorists Coverage Endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.
 

 The portion of the policy dealing with physical damage coverage provides in pertinent part:
 

 J^SECTION III — PHYSICAL DAMAGE COVERAGE
 

 A. Coverage
 

 1. We will pay for “loss” to a covered “auto” or its equipment under:
 

 a. Comprehensive Coverage From any cause except:
 

 (1) The covered “auto’s” collision with another object; or
 

 (2) The covered “auto’s” overturn.
 

 b. Specified Causes of Loss Coverage
 

 Caused by:
 

 (1) Fire, lightning or explosion;
 

 (2) Theft;
 

 (3) Windstorm, hail or earthquake;
 

 (4) Flood;
 

 (5) Mischief or vandalism; or
 

 (6) The sinking, burning, collision or derailment of any conveyance transporting the covered “auto”.
 

 c. Collision Coverage
 

 Caused by:
 

 
 *179
 
 (1) The covered “auto’s” collision with another object; or
 

 (2) The covered “auto’s” overturn.
 

 [[Image here]]
 

 C. Limit of Insurance
 

 1. The most we will pay for “loss” in any one “accident” is the lesser of:
 

 a. The actual cash value of the damaged or stolen property as of the time of the “loss”; or
 

 b. The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.
 

 2. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total “loss”.
 

 3. If repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.
 

 The policy definitions provide in pertinent part:
 

 SECTION V — DEFINITIONS
 

 A. “Accident” includes continuous or repeated exposure to the same conditions resulting in “bodily injury” or “property damage”.
 

 [[Image here]]
 

 | mC. “Bodily injury” means bodily injury, sickness or disease sustained by a person including death resulting from any of these.
 

 [[Image here]]
 

 J. “Loss” means direct and accidental loss or damage.
 

 Coverage for “Loss”
 

 The plaintiffs contend that, under the terms of the insurance policy, there are separate bases of recovery for “accident” and “loss.” They argue that Mr. Washington suffered loss for his personal injury and Mr. Richard’s family suffered a separate loss asserted through wrongful death and survival actions. Therefore, they argue that the policy limits under the insurance policy are $5 million per “loss.”
 

 Most insurance policies expressly define words or phrases which may be understood in different senses. Where a policy of insurance contains a definition of any word or phrase, this definition is controlling.
 
 Hendricks v. American Employers Insurance Company,
 
 176 So.2d 827 (La.App. 2d Cir.1965),
 
 writ refused,
 
 248 La. 415, 179 So.2d 15 (1965). As stated above, the Greenwich policy defines “loss” as direct and accidental loss or damage. It is clear from a reading of the policy that the word “loss” applies only to property damage. The word is used almost exclusively in that section of the policy relating to physical property damage to covered autos. The plaintiffs assert a claim for bodily injury to Mr. Washington which is defined in the policy as “bodily injury, sickness, or disease sustained by a person including death resulting from any of these.” The plaintiffs have offered no authority |nto support their claim that the word “loss” as defined in the Greenwich policy is directed at personal injuries arising from the accident.
 

 The plaintiffs confuse the definition of “loss” as set forth in the policy with the concept of what they term “legal loss.” There is nothing in the policy or in the jurisprudence that supports the plaintiffs’ attempts to equate the definition of “loss” with legal loss such as a claim for personal injury, wrongful death, or a survival action. This construction is clearly not supported by the wording and definition of the policy at issue here.
 

 Further, the insurance policy clearly states that, regardless of the number of claims made in the accident, the
 
 *180
 
 most that Greenwich will pay for the total of all damages resulting from any one accident is the limit of insurance for liability coverage shown on the declarations page. That .amount is $5 million. Generally, automobile insurance policies are written with “split” limits of liability in which the insurer’s obligation for bodily injury is limited to a specific amount per person with a maximum amount per accident or occurrence together with a separate limit for property damage liability coverage. However, some automobile policies are written with a “single” (or combined) limit per accident or occurrence for liability and property damage coverage.
 
 Watts v. Aetna Casualty and Surety Company,
 
 574 So.2d 364 (La.App. 1st Cir.1990),
 
 writ denied,
 
 568 So.2d 1089 (La.1990). Under the terms of the policy, all damages resulting from one accident, regardless of the number of claims made, are subject to the $5 million policy coverage limit. See
 
 Cooper v. Huddy,
 
 581 So.2d 723 (La.App,12 1st Cir.1991),
 
 writ denied,
 
 585 So.2d 552 (La.1991). The declarations page in the policy in the present case specifies that it is a combined single limit (CSL) policy rather than a split limit coverage policy which provides separate limits “per person” and “per accident.” We reject the plaintiffs’ argument that the policy provides separate $5 million policy limits for each “loss.”
 

 Coverage for “Accident”
 

 The plaintiffs assert that the collisions with Mr. Washington and Mr. Richard constitute separate accidents within the definition of the insurance policy and therefore the policy limits are $5 million per accident. This argument is without merit.
 

 The insurance policy at issue here states that “[rjegardless of the number of covered ‘autos’, ‘insureds’, premiums paid, claims made or vehicles involved in the ‘accident’, the most we will pay for the total of all damages ... combined, resulting from any one ‘accident’ is the Limit of Insurance for Liability Coverage shown in the Declarations.” As stated above, the term, “accident” is defined as “continuous or repeated exposure to the same conditions resulting in ‘bodily injury5 or ‘property damage.’ ”
 

 Most liability policies contain a policy limits clause stating that the insured’s liability is limited to a specified amount. This policy limit may apply to each “occurrence” or “accident.” While there is usually no doubt about the number of policy limits in a given case, the question of what constitutes a single “occurrence” or “accident” within the meaning of the policy limits clause in a liability insurance policy arises when the insured |1shas damaged several individuals, each of whose claims exceeds the policy limit amount, or the insured has damaged several pieces of property all owned by the same individual or entity, but with damage to each item exceeding the policy limit amount, or the insured has committed several acts of negligence which have each independently damaged one individual. In determining whether a single policy limit or multiple policy limits should be applied to a particular situation, “occurrence” and “accident” have been defined by courts across the nation in three ways. The majority of courts have adopted the general view that, to determine whether there is a single or multiple occurrence or accident within the meaning of the policy limits clause of a liability policy, one must look to the cause or causes of the accident or occurrence. Other courts have looked to the effect of the accident or occurrence, making the entire policy limits available to each injured or damaged party. A third group of courts has held that the phrase “per occurrence” in a limitation of liability clause in a
 
 *181
 
 liability policy refers, not to the cause of the occurrence or to the effect, but to the event that triggered liability.
 
 [1]
 

 Numerous cases in Louisiana and in the federal courts have construed insurance policies with the terms “accident” or “occurrence” to determine the extent of insurance coverage in light of the facts presented by the various situations. In
 
 Anchor Casualty Company v. McCaleb,
 
 178 F.2d 822 (5th Cir.1949), an oil well blew out and spewed oil, gas, sand and mud into the air for more than two days, causing damage to numerous nearby 114property owners. The insurer argued that all losses and damages were incidental to the blowout and constituted a single accident, limiting coverage to the policy limit for a single accident. The injured property owners contended that when the oil, sand, and mud were blown onto the properties of various owners, additional accidents resulted to the property of each of them.
 

 The court in
 
 Anchor Casualty
 
 found that the blowing out of the well was not a single accident, but a series of events. The eruptions continued intermittently for more than two days and during this period, the wind changed from time to time, blowing sand and mud on different properties. Based upon this reasoning, the court held that the “per accident” limit of the insurance policy was not applicable. Rather, the limit for aggregate damage applied.
 

 In
 
 Lombard v. Sewerage and Water Board of New Orleans,
 
 284 So.2d 905 (La. 1978), the Louisiana Supreme Court followed the reasoning of
 
 Anchor Casualty.
 
 In
 
 Lombard,
 
 numerous plaintiffs sought to recover for damages caused by a canal construction project. The project lasted for more than one year. The plaintiffs claimed various forms of property damage to their houses caused by excavation, pile driving, and other activities carried on during the course of the construction project. The insurance policy for the City of New Orleans substituted the term “occurrence” for “accident.” An “occurrence” was defined as an accident or a continuous or repeated exposure to conditions which result during the policy period in injury to person or real or tangible property which is accidentally caused. All | ^damages arising out of such exposure to substantially the same general conditions were to be considered as arising out of one occurrence and one policy limit would be applicable.
 

 The court in
 
 Lombard
 
 found that the construction project, which lasted for more than one year, was not a single “occurrence” within the contemplation of the insurance policy, but was a series of “occurrences” resulting in damages during the course of the prolonged undertaking. The court stated that the word “occurrence” as used in the policy must be construed from the point of view of the many persons whose property was damaged. The court found that when the separate property of each plaintiff was damaged by a series of events, one occurrence was involved insofar as each property owner was concerned. Although the same causes may have operated on several properties at the same time, resulting in varying degrees of damage, the court found that it could not be regarded as one occurrence, but the damage to each plaintiff was a separate occurrence.
 
 [2]
 

 
 *182
 
 In
 
 Tesvich v. 3-A’s Towing Company,
 
 547 So.2d 1106 (La.App. 4th Cir.1989),
 
 writs denied,
 
 552 So.2d 383 (La.1989), 552 So.2d 384 (La.1989), numerous fishermen holding leases from the state for oyster production filed suit claiming their oyster beds were damaged when a tugboat and barge became grounded and subsequently was removed by | ^another tugboat. Based upon the reasoning of the Louisiana Supreme Court in
 
 Lombard v. Sewerage and Water Board of New Orleans, supra,
 
 the fourth circuit found that the claim of each plaintiff with respect to his or her leases constituted a separate occurrence.
 

 In
 
 Society of Roman Catholic Church of Diocese of Lafayette & Lake Charles, Inc. v. Interstate Fire & Casualty Company,
 
 26 F.3d 1359 (5th Cir.1994), two pedophilic priests molested 31 children over a period of seven years. Numerous claims were made on behalf of the children and their parents. Several insurance companies provided coverage to the plaintiff during the time period. The various insurance policies involved in the case were “occurrence” based, meaning their limits of coverage were capped on a per occurrence basis. The record did not show the number of times each child was molested or the extent of the damage resulting from each encounter. The Fifth Circuit was called upon to determine the number of occurrences present in the case in order to determine the amount of coverage provided by the various insurers. The court found the definition of “occurrence” to be somewhat uncertain and looked to
 
 Lombard v. Sewerage & Water Board of New Orleans, supra,
 
 for guidance. Following the reasoning of
 
 Lombard,
 
 the Fifth Circuit found that the damage to each child was a separate occurrence.
 
 [3]
 

 In
 
 Exxon Corporation v. St. Paul Fire and Marine Insurance Company,
 
 129 F.3d 781 (5th Cir.1997), the Fifth Circuit found that, where five crew members claimed to be damaged by fumes from sludge carried by 117vessels they worked on and brought suit for their alleged damages, there were five separate occurrences based upon the court’s reading of
 
 Lombard v. Sewerage and Water Board of New Orleans, supra.
 

 Other cases have found the facts and reasoning of
 
 Anchor Casualty Company v. McCaleb, supra,
 
 and
 
 Lombard v. Sewerage and Water Board of New Orleans, supra,
 
 to be distinguishable. The holding of
 
 Anchor Casualty
 
 was limited by
 
 St. Paul-Mercury Indemnity Company v. Rutland,
 
 225 F.2d 689 (5th Cir.1955). In
 
 St. Paul,
 
 a truck and train collided, resulting in damage to 16 railroad cars. The argument was made that, based upon
 
 Anchor Casualty,
 
 there was a series of accidents or occurrences. The court in
 
 St. Paul
 
 stated that the decision in
 
 Anchor Casualty
 
 was based upon the court’s appreciation of the facts and a consideration of the applicable insurance policy which were distinguishable from the circumstances present in
 
 St. Paul.
 
 The Fifth Circuit in
 
 St. Paul
 
 found that the single, sudden, and unintentional collision between the truck and train was one accident and the insurer’s liability was limited to the coverage limit for one accident.
 

 The case of
 
 McKeithen v. S.S. Frosta,
 
 430 F.Supp. 899 (E.D.La.1977), arose when a ferry operated by the Louisiana
 
 *183
 
 Department of Highways collided with a Norwegian tanker. The ferry sank and numerous injuries and deaths resulted. The insurer of the Department of Highways sought a declaratory judgment that its liability under its insurance policy could not exceed the $300,000 limit in respect to all claims resulting from the collision. The individual claimants and the Department of Highways [ ^contended that the insurance policy provided $300,000 in coverage per claimant.
 

 The insurance policy provided that, “Liability hereunder in respect of loss, damage, costs, fees, expenses, or claims arising out of or in consequence of any one occurrence is limited to the amount hereby insured. (For the purpose of this clause each occurrence shall be treated separately, but a series of claims hereunder arising from the same occurrence shall be treated as due to that occurrence.)”
 

 The court in
 
 McKeithen
 
 found that the insurance policy made it clear that a series of claims could arise from one occurrence. According to the court, the wording of the policy showed that the clause was intended to include all claims arising out of a single event, that is, all damages claimed to have been caused by that event. Therefore, the limit of liability was $300,000. The
 
 McKeithen
 
 court discussed and distinguished the holding of
 
 Anchor Casualty Company v. McCaleb, supra,
 
 reasoning that the court in
 
 Anchor Casualty
 
 was concerned with a series of eruptions when an oil well blew out whereby one individual might be damaged by the first eruption and then damaged again by later event. Another individual, in another location, might be damaged by a wholly different discharge minutes or hours later.
 

 The case of
 
 Whetstone v. Dixon,
 
 616 So.2d 764 (La.App. 1st Cir.1993),
 
 units denied,
 
 623 So.2d 1333 (La.1993), involved an eastbound motorist on a two-lane road who began swatting a bee that landed on his arm. He crossed the center line and collided with two separate oncoming westbound vehicles. The plaintiffs cited
 
 Lombard v. Sewerage and Water \^Board of New Orleans, supra,
 
 in support of their argument that, under the terms of the applicable insurance policy, two occurrences were involved. The first circuit found
 
 Lombard
 
 to be factually distinguishable and concluded that there was one occurrence which was defined in the insurance policy as “an accident, including continuous or repeated exposure to substantially the same general harmful conditions.” The “per occurrence” policy limit was applied to define the extent of coverage.
 

 In
 
 Lantier v. Aetna Casualty & Surety Company,
 
 614 So.2d 1346 (La.App. 3d Cir. 1993), two people were killed in an airboat accident. The argument was made that, under the terms of the applicable insurance policy, because there were two deaths, there were two occurrences. The third circuit rejected that argument, finding that there was only one occurrence and the “per occurrence” limit of liability applied.
 

 Some cases have found separate accidents based upon the specific facts of the case. In
 
 Liberty Mutual Insurance Company v. Rawls,
 
 404 F.2d 880 (5th Cir.1968), a motorist was traveling north on a public highway at a high rate of speed, being pursued by two deputy sheriffs. The motorist collided with the rear of one automobile, knocking it off the highway. The motorist then continued traveling north and veered across the center line into the path of oncoming southbound traffic where he collided with another automobile. The drivers of both cars struck by the fleeing motorist sought to recover against the mo
 
 *184
 
 torist’s insurance carrier. The question arose as to whether one or two accidents occurred.
 

 12pThe Fifth Circuit found that there were two accidents because the collisions were separated by time and distance and the fleeing motorist maintained control of his vehicle after the impact with the first vehicle. The court found this conclusion would be reached under either the “causation theory” applied in
 
 St. Paul-Mercury Indemnity Company v. Rutland, supra,
 
 determining an event from the standpoint of the conduct forming the causative act, or the “effect theory” used in
 
 Anchor Casualty Company v. McCaleb, supra,
 
 where an event is judged from the point of view of a person sustaining injury.
 

 In
 
 Miley v. Continental Insurance Company,
 
 93-1652 (La.App. 1st Cir.9/9/94), 645 So.2d 1166, a forestry management firm conducted a controlled burn on land adjacent to Interstate 12 in Tangipahoa Parish. Early the next day, two sets of collisions occurred on Interstate 12 adjacent to the land where the controlled burn had been conducted. The collisions occurred 15 minutes apart and two-tenths of a mile apart. They were caused by poor visibility from smoke generated by the fires. The forestry management company contended that its insurance policy had a $4 million “per occurrence” coverage limit. The question in the case arose as to whether there was one “occurrence” or two. The policy defined “occurrence” as an accident, “including continuous or repeated exposure to substantially the same general harmful conditions.” The trial court found that there were two accidents, based upon the reasoning of
 
 Lombard v. Sewerage and Water Board of New Orleans, supra.
 
 The appellate court affirmed, finding that the two collisions constituted two distinct accidents 121 separate in time and space on the highway. Each set of collisions was a single, identifiable event and therefore each collision was an “occurrence” within the terms of the insurance policy.
 

 However, the first circuit found that
 
 Lombard
 
 was not applicable to the facts. The appellate court pointed out that in
 
 Lombard,
 
 the finding of an occurrence was based on continuous or repeated exposure to the pile driving activities and not on an accident in the ordinary sense of the word. In
 
 Miley,
 
 the court found that, unlike the pile-driving activity in
 
 Lombard,
 
 the smoke did not damage anything but was merely a contributing cause of the two sets of collisions. The appellate court in
 
 Miley
 
 stated, “Because this case involves the traditional type of accident, specifically vehicular collisions, the trial court’s characterization of an occurrence involving continuous or repeated exposure to substantially the same general harmful conditions was inappropriate.”
 

 The facts in the present matter do not present a case of repeated exposure like
 
 Anchor Casualty Company v. McCaleb, supra, Lombard v. Sewerage, and Water Board of New Orleans, supra,
 
 and their progeny discussed above. Rather, the facts here show that the truck driven by Mr. McCauley overturned and collided with Mr. Washington and Mr. Richard almost simultaneously, resulting in a single accident under the facts, the terms of the Greenwich insurance policy, and the reasoning of
 
 St. Paul-Mercury Indemnity Company v. Rutland, supra, McKeithen v. S.S. Frosta, supra, Whetstone v. Dixon, supra,
 
 and
 
 Lantier v. Aetna Casualty & Surety Company, supra,
 
 discussed above. The facts of the present case are also ^distinguishable from
 
 Liberty Mutual Insurance Company v. Rawls, supra,
 
 and
 
 *185
 

 Miley v. Continental Insurance Company, supra,
 
 which involved two distinct accidents separated by time and distance. In the present case, the collisions were almost simultaneous.
 
 [4]
 

 Accordingly, we affirm the trial court ruling granting summary judgment in favor of Greenwich based upon a finding that there was a single accident in this case, that the limit of the Greenwich insurance policy was $5 million, and that amount has been paid by the company.
 

 CONCLUSION
 

 For the reasons stated above, we affirm the ruling of the trial court granting summary judgment in favor of Greenwich Insurance Company, finding that it has satisfied the limits of the insurance policy applicable in this matter. Costs in this court are assessed to the plaintiffs, Mae Francis Washington Smith, and John Washington, on behalf of the interdict, Henry Gene Washington.
 

 AFFIRMED.
 

 [1]
 

 . See
 
 What Constitutes Single Accident or Occurrence Within Liability Policy Limiting Insurer's Liability to a Specified Amount Per Accident or Occurrence,
 
 64 A.L.R.4th 668.
 

 [2]
 

 . The holding in
 
 Lombard
 
 was criticized in William Shelby McKenzie & H. Alston Johnson, III, 15 Louisiana Civil Law Treatise,
 
 Insurance Law and Practice
 
 § 185 (3d ed.2006):
 

 This interpretation does not appear to be consistent with the policy language. If followed, its applicability should be limited to repeated exposure cases. The policy provi
 
 *182
 
 sions limiting liability "per occurrence” are not ambiguous and such limits should be applicable to all bodily injury and property damage sustained by multiple persons arising out of a single incident; they should not be applied to each person separately. [Footnote omitted.]
 

 [3]
 

 . See also
 
 H.E. Butt Grocery Company v. National Union Fire Insurance Company of Pittsburgh, Pa.,
 
 150 F.3d 526 (5th Cir. 1998).
 

 [4]
 

 . We are aware of
 
 Esparza v. Eagle Express Lines, Inc.,
 
 2007 WL 969585 (E.D. Texas 3/28/07), cited by the plaintiffs, in which a tractor-trailer rig crossed the median of a highway and collided with two oncoming vehicles. Based upon
 
 H.E. Butt Grocery Company v. National Union Fire Insurance Company of Pittsburgh, Pa., supra,
 
 and
 
 Liberty Mutual Insurance Company v. Rawls, supra,
 
 the court found that there were two accidents or occurrences separated by time and distance. We find that this case is not controlling here. The facts in
 
 Esparza
 
 show that the impacts occurred 2-5 seconds and 30-300 feet apart. Certainly, the collisions were not separated by time and distance in the way those in
 
 Liberty Mutual Insurance Company v. Rawls, supra,
 
 and
 
 Miley v. Continental Insurance Company, supra,
 
 were. Under these facts, we reject the reasoning of the case as flawed and decline to follow it.