GASKINS, J.
 

 |, The defendants, Eye Associates of Northeast Louisiana and Hanover Insurance Company, appeal a trial court ruling granting summary judgment in favor of the Louisiana Medical Mutual Insurance Company (“LAMMICO”), essentially finding that the plaintiffs claim was based in tort and not in medical malpractice. For the following reasons, we reverse the trial court judgment and remand for further proceedings.
 

 FACTS
 

 The plaintiff, Betty Jean Russell, went to Eye Associates of Northeast Louisiana (“Eye Associates”) on June 27, 2008, with complaints associated with diabetic retino-pathy. Ms. Russell, who was 78 years old, was taken to her appointment by her granddaughter, Ashley Nicole Dixon. Ms. Russell was able to get out of the car and into her wheelchair. Ms. Dixon wheeled the plaintiff into the office. When Ms. Russell was called to an examination room for her appointment, an employee of Eye Associates attempted to have her move from her wheelchair to another chair and then back into her wheelchair. After standing unsupported, Ms. Russell fell, suffering shoulder injuries and a fracture of her left distal femur.
 

 Personnel at Eye Associates helped Ms. Russell up from the floor and placed her back in her wheelchair, but did not call for an ambulance. Ms. Russell was driven to the emergency room by Ms. Dixon. The comminuted fracture of the left distal femur was surgically repaired. Prior to the injury, Ms. Russell was able to walk some and used the wheelchair on occasion. Ms. Russell claimed that after her injury, she was no longer able to walk at all.
 

 |2The plaintiff filed suit against Eye Associates and its general liability insurer, Hanover Insurance Company (“Hanover”).
 
 *233
 
 The plaintiff also filed a petition to form a medical review panel.
 

 LAMMICO, the professional liability insurer for Eye Associates, filed a petition of intervention. Ms. Russell filed an answer, cross-claim, and third party demand against LAMMICO and Eye Associates, reurging her allegations from her original petition for damages and from the petition for formation of a medical review panel.
 

 Hanover filed a motion for summary judgment arguing that it provided business property and business liability insurance to Eye Associates, but did not provide insurance for injuries arising out of the furnishing of professional services. Hanover contended that Ms. Russell was injured while employees of Eye Associates were rendering professional services.
 

 LAMMICO filed its own motion for summary judgment, arguing that medical treatment was not being rendered to Ms. Russell at the time of her accident; therefore LAMMICO was not liable for coverage for the plaintiffs injuries. LAMMICO contended that Ms. Russell’s fall was not treatment-related and was not caused by a dereliction of professional skill.
 

 A hearing was held on the motions for summary judgment. The trial court stated that the evidence did not establish that a health care provider was at fault or breached a standard of care causing the injury involved here. According to the trial court, it considered the factors outlined in
 
 Coleman v. Deno,
 
 2001-1517 (La.1/25/02), 813 So.2d 303, and found that those Isfactors did not apply to this case. The trial court determined that this was not a medical malpractice case; therefore it granted summary judgment in favor of LAMMICO, dismissing the plaintiffs claims against the company. The ruling was certified as a final appealable judgment under La. C.C.P. art. 1915. The motion for summary judgment on behalf of Hanover was denied.
 

 Hanover applied for supervisory review of the denial of its motion for summary judgment. On March 16, 2011, this court denied Hanover’s writ application on the showing made, stating that Hanover had an adequate remedy by appeal of the granting of the motion for summary judgment in favor of LAMMICO.
 

 Hanover appealed the grant of summary judgment in favor of LAMMICO, arguing that the trial court erred in basing its insurance coverage decision on the Louisiana Medical Malpractice Act (“LMMA”), and the factors set forth in
 
 Coleman v. Deno, supra,
 
 instead of applying the policy language set forth in LAMMICO’s professional liability insurance policy.
 

 Hanover also contends that the trial court erred in granting LAMMICO’s motion for summary judgment because the undisputed facts and evidence establish that the plaintiffs injuries occurred as a result of a “medical incident,” as defined by the LAMMICO policy, and therefore, LAMMICO was not entitled to judgment as a matter of law.
 

 LEGAL PRINCIPLES
 

 A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed [4for by a litigant.
 
 Samaha v. Rau,
 
 2007-1726 (La.2/26/08), 977 So.2d 880;
 
 Amos v. Crouch,
 
 46, 456 (La.App.2d Cir.6/29/11), 71 So.3d 1053. Appellate courts review summary judgments
 
 de novo,
 
 under the same criteria that govern a district court’s consideration of whether summary judgment is appropriate.
 
 Jenkins v. Willis Knighton Medical Center,
 
 43, 254 (La.App.2d Cir.6/4/08), 986 So.2d 247. A court must grant a motion for summary judgment “if the pleadings, depositions, answers to inter
 
 *234
 
 rogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B). A fact is material if its existence or nonexistence may be essential to the plaintiffs cause of action under the applicable theory of recovery.
 
 Amos v. Crouch, supra.
 

 Summary judgment procedure is favored and is designed to secure the just, speedy and inexpensive determination of actions. La. C.C.P. art. 966(A)(2);
 
 Jenkins v. Willis Knighton Medical Center, supra.
 
 The party opposing summary judgment cannot rest on the mere allegations or denials in his pleadings, but must show that he has evidence which, if believed, could satisfy his evidentiary burden of proof at trial. If he has no such evidence, then there is no genuine issue of material fact, and the movant is entitled to summary judgment. La. C.C.P. art. 966(C)(2);
 
 Jenkins v. Willis Knighton Medical Center, supra.
 

 The moving party bears the burden of proof. However, when he will not bear the burden of proof at trial on the matter before the court on | Bsummary judgment, the movant is not required to negate all essential elements of the adverse party’s claim; he need only point out an absence of factual support for one or more essential elements of the adverse party’s claim. If the adverse party then fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial, there is no genuine issue of material faót and summary judgment is appropriate. La. C.C.P. art. 966(C)(2).
 

 On a motion for summary judgment, the district court cannot make credibility determinations or weigh conflicting evidence. In deciding a motion for summary judgment, the district court must assume that all affiants are credible.
 
 Nicholson v. Horseshoe Entertainment,
 
 46,081 (La. App.2d Cir.3/2/11), 58 So.3d 565,
 
 writ denied,
 
 2011-0679 (La.5/20/11), 63 So.3d 980.
 

 A summary judgment may be rendered on the issue of insurance coverage alone although there is a genuine issue as to liability or the amount of damages.
 
 Beck v. Burgueno,
 
 43,557 (La.App.2d Cir.9/17/08), 996 So.2d 404. When determining whether a policy affords coverage for an incident, the insured bears the burden of proving that the incident falls within the policy’s terms. Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. An insurer seeking to avoid coverage through summary | (-judgment bears the burden of proving that some provision or exclusion applies to preclude coverage.
 
 Beck v. Burgueno, supra.
 

 An insurance policy is a contract between the insured and the insurer and has the effect of law between the parties. Because an insurance policy is a contract, the rules established for the construction of written instruments apply to contracts of insurance. The parties’ intent, as reflected by the words of an insurance policy, determines the extent of coverage, and the intent is to be determined in accordance with the plain, ordinary, and popular sense of the language used in the policy, unless the words have acquired a technical meaning. La. C.C. art. 2047;
 
 Washington v. McCauley,
 
 45,916 (La.App.2d Cir.2/16/11), 62 So.3d 173,
 
 unit denied,
 
 2011-0578 (La.4/29/11), 62 So.3d 115.
 

 If the language in an insurance contract is clear and unambiguous, the agreement must be enforced as written
 
 *235
 
 and a reasonable intei’pretation consistent with the obvious meaning and intent of the policy must be given.
 
 Washington v. McCauley, supra.
 
 However, if after applying the other rules of construction an ambiguity remains, the ambiguous provision is to be construed against the drafter and in favor of the insured.
 
 Elliott v. Continental Casualty Company,
 
 2006-1505 (La.2/22/07), 949 So.2d 1247. An insurance policy should not be interpreted in an unreasonable or strained manner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion.
 
 Washington v. McCauley, supra.
 
 The determination of whether a contract is clear or ambiguous is a question of law.
 
 Washington v. McCauley, supra.
 

 |7The LMMA is found in La. R.S. 40:1299.41,
 
 et seq.
 
 A health care provider is defined in La. R.S. 40:1299.41(A)(10) as follows in pertinent part:
 

 “Health care provider” means a person, partnership, limited liability partnership, limited liability company, corporation, facility, or institution licensed or certified by this state to provide health care or professional services as a physician, ... registered or licensed practical nurse or certified nurse assistant, ... nurse practitioner, clinical nurse specialist, ... optometrist, ... or any professional corporation a health care provider is authorized to form under the provisions of Title 12 of the Louisiana Revised Statutes of 1950, or any partnership, limited liability partnership, limited liability company, management company, or corporation whose business is conducted principally by health care providers, or an officer, employee, partner, member, shareholder, or agent thereof acting in the course and scope of his employment.
 

 Malpractice is defined in La. R.S. 40:1299.41(A)(1S) as follows:
 

 “Malpractice” means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient.
 

 In
 
 Coleman v. Deno, supra,
 
 the Louisiana Supreme Court listed six facts to consider in determining whether certain conduct by a qualified healthcare provider constitutes malpractice as defined by the LMMA. Those factors are: (1) whether the particular wrong is “treatment related” or caused by a dereliction of professional skill; (2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of |scare was breached; (3) whether the pertinent act or omission involved assessment of the patient’s condition; (4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform; (5) whether the injury would have occurred if the patient had not sought treatment; and (6) whether the tort alleged was intentional.
 

 DISCUSSION
 

 Hanover argues that the trial court erred in evaluating the matter under the LMMA and the factors contained in
 
 Coleman v. Deno, supra,
 
 rather than looking to the language of the LAMMICO
 
 *236
 
 policy. Hanover also argues that the trial court erred in granting summary judgment in favor of LAMMICO because the undisputed facts and evidence established that the plaintiffs injuries occurred as a result of a “medical incident” as defined in the LAMMICO policy.
 

 LAMMICO issued a professional liability policy to Eye Associates. The policy provides coverage for medical incidents arising out of professional services. A “medical incident” is defined as “a single act or omission or a series of related acts or omissions which result or is likely to result, in damages, arising out of the rendering, or failure to render, professional services to any one person by the insured, or by any person for whose acts or omissions the insured is legally responsible; a single act or omission or a series of related acts or omissions by the insured shall be considered one medical incident.” (Emphasis supplied in original.)
 

 |9The term “professional services” is defined in the policy as “the furnishing of professional healthcare services including medical treatment, making [a] medical diagnosis, rendering medical opinions or medical advice ... performing management and administrative duties for an entity shown as an insured in this policy....” (Emphasis supplied in original.)
 

 Ms. Russell gave a deposition which was included in Hanover’s motion for summary judgment. The plaintiff said that she went to Eye Associates for her appointment and was taken to an exam room. She claims that an Eye Associates employee, who was wearing scrubs, put her in one of their wheelchairs to do an eye examination. She said that a machine was used to examine her eyes. The Eye Associates employee then wanted her to look into another machine. This required Ms. Russell to get back into her wheelchair. While trying to move from the Eye Associates’ chair to her wheelchair, she fell.
 

 Ms. Dixon, who drove her grandmother to the appointment, also gave a deposition in which she stated that Ms. Russell was called back to an exam room by a lady wearing scrubs. The lady asked Ms. Russell to move to an exam chair, which she did. According to Ms. Dixon, a machine in the room would not reach because Ms. Dixon was not able to sit up straight. The Eye Associates employee then asked Ms. Russell to move back to her wheelchair to continue the examination. Ms. Dixon said that in the course of this maneuver, Ms. Russell said she needed to stop, and then she fell.
 

 The definition of malpractice in La. R.S. 40:1299.41(A)(10), includes unintentional torts by healthcare providers and their employees based on Imhealth care or professional services rendered. The LAMMI-CO policy provides professional liability coverage for incidents arising out of the rendering or failure to render professional services. Under the terms of the policy, professional services include treatment, diagnosis, rendering medical opinions or advice, or performing management or administrative duties for the insured.
 

 In arguing that this matter did not meet the statutory or policy definitions of medical malpractice, LAMMICO went through a discussion of the factors set forth in
 
 Coleman v. Deno, supra,
 
 set forth above. In particular, LAMMICO contends that the pertinent act or omission did not involve the assessment of the patient’s condition. LAMMICO pointed to the deposition testimony of Ms. Dixon where she stated that her grandmother was transferring from one chair back to her wheelchair so that her eye exam could be conducted. LAMMICO contended that no doctor or health care provider was involved in the accident and no assessment of the plaintiffs condition had taken place. However, we note that Ms. Russell stated that the
 
 *237
 
 Eye Associates employee involved in this accident had already used one type of machine to examine her eyes and was attempting to position the plaintiff for the use of another machine in order to continue her eye examination. An examination of Ms. Russell’s eyes was necessary in order to assess and treat her condition.
 

 This creates a genuine issue of material fact as to whether the accident constitutes a medical incident which occurred in connection with the rendering of professional services, satisfying the statutory definition ofjnmalpractice and meeting the terms of the LAMMICO policy for coverage. We also note that LAMMICO has failed to show that the employee involved in the accident was not a health care provider rendering professional services within the definition of the LMMA. This also is a disputed issue of fact. As pointed out at the hearing on the motion for summary judgment, the employee involved in this incident was only recently located. If the parties choose to obtain her statement, it would have bearing as to what her professional responsibilities were, whether the plaintiff was receiving professional services at the time of the accident, and whether this was a medical incident under the terms of the LAMMICO policy as well as under the LMMA. The trial court erred in granting summary judgment in favor of LAMMICO. That judgment is reversed and the matter is remanded to the trial court for further proceedings.
 
 [1]
 

 | ^CONCLUSION
 

 For the reasons stated above, we reverse the trial court ruling granting summary judgment in favor of LAMMICO and remand the matter to the trial court for further proceedings. All costs in this court are assessed to LAMMICO.
 

 REVERSED; REMANDED FOR FURTHER PROCEEDINGS.
 

 [1]
 

 . LAMMICO also argues that the jurisprudence supports its position that the insurance policy does not cover the plaintiff’s accident. According to LAMMICO, the case of
 
 Rachal v. Tenet Healthcare Systems,
 
 2003-0630 (La. App.4th Cir. 11/12/03), 860 So.2d 1175,
 
 writ denied,
 
 2004-0205 (La.3/26/04), 871 So.2d 350, supports its position. In
 
 Rachal,
 
 a patient fell in a hospital room after hospital staff failed to render assistance when requested. The plaintiff alleged that the sole and proximate cause of the fall was the slippery condition of the floor. The fourth circuit found that this matter did not fall under the LMMA, but was a general tort case.
 

 See and compare
 
 Meseke v. St. Francis Medical Center,
 
 40, 317 (La.App.2d Cir. 10/26/05), 914 So.2d 136, in which a hospital patient fell while trying to go to the bathroom after repeated requests for assistance were unanswered by hospital staff. This court found that the claim was based in medical malpractice where the plaintiff alleged that the hospital failed to maintain proper safeguards to prevent the fall, neglected to notify the proper physicians after the fall, and failed to provide medical care consistent with appropriate standards. We distinguished the case from
 
 Rachal v. Tenet Healthcare Systems, supra,
 
 in which the plaintiff, who fell in a hospital room while attempting to walk to the bathroom, only complained that the floor was slippery.
 

 By contrast, other cases have found that the LMMA applied to such claims. The case most on point with the facts in the present matter is
 
 Harris v. Sternberg,
 
 2001-1827, 2001-2170 (La.App.4th Cir.5/22/02), 819 So.2d 1134,
 
 writ denied,
 
 2002-1617 (La.9/30/02), 825 So.2d 1198. In
 
 Harris,
 
 a patient being treated for morbid obesity fell while getting onto a special scale at the office of the doctor treating him for that condition. He was not being assisted by the doctor or the doctor’s employees at the time of the accident. The general liability insurer and the professional liability insurer each filed motions for summary judgment. The fourth circuit applied the factors enumerated in
 
 Coleman v. Deno, supra,
 
 and found that the incident complained of by the plaintiff was covered by the LMMA.