MOLAISON, J.,
Relator, Louisiana Insurance Guaranty Association ("LIGA")[1] seeks review of the trial court's denial of its motion for summary judgment on the issue of whether its predecessor in interest, Affirmative Casualty Insurance Company ("ACIC") had issued an automobile liability insurance policy for defendant, Holli Sigur, that was in effect at the time of the September 8, 2012 automobile accident, which forms the basis of the instant lawsuit.
FACTS
The application before us indicates that on June 9, 2012, Holli Sigur began the process of purchasing an automobile liability insurance policy through ACIC which was doing business as USAgencies Casualty Insurance Company, Inc. ("USAgencies"). On that date, Sigur tendered an amount of $177.14 via credit card, which was classified as "Premium and Fees" on the receipt generated by USAgencies. The "Declarations" sheet for the policy detailed that the total cost for the policy was $1066.00, which consisted of a $1026.00 "Premium" and a $40.00 "Policy Fee." The first page of the policy, in the "Agreement" section of the document, stated, "If you pay your premium we agree to insure you subject to all the terms of this Policy *589 for the coverage up to the Limits of Liability as indicated on the declarations page of this Policy." Additionally, under the "Cancellation or Non-Renewal Provisions" section, it provided:
We may cancel this Policy within the first sixty (60) days from the effective date of the insurance policy by mailing notice of cancellation to you at the address shown on the declarations page:
1. At least ten (10) days notice, if cancellation is for non-payment of premium.
2. At least thirty (30) days notice, via mail, in all other cases.
According to LIGA, the September 26, 2014 affidavit of Jose Sergio Vidal[2] and attachments thereto, establish that Sigur "selected to finance her premiums via LIFCO through a consumer insurance premium finance agreement which included six (6) equal monthly installments due on the 18th of every month with her first installment due beginning June 18, 2012." On June 11, 2012, after Sigur did not return the completed insurance application and finance agreement, USAgencies mailed a 30 Day Notice of Cancellation to Sigur's home address, pursuant to LSA-R.S. 22:1266. The notice advised Sigur that the policy was being cancelled due to her failure to complete and return the policy application documents, and that the cancellation would be effective in 30 days on July 11, 2012, at 12:01 a.m.
Next, when Sigur did not pay the first installment of her policy premium, USAgencies, pursuant to La. R.S. 22:1266, mailed a Notice of Cancellation (formally referred to as a "10 day notice") to her home address on June 18, 2012. The 10-day notice advised Sigur that the policy was being cancelled due to non-payment of the premium and that the cancellation would be effective in 10 days, on June 28, 2012, at 12:01 a.m. The 10 day notice further advised Sigur that she could avoid cancellation by payment of the outstanding balance prior to the cancellation date, and the notice also reminded Sigur that she had the option of financing the remaining balance of the premium through LIFCO.
It is not disputed that Sigur never returned a completed insurance application or a completed consumer insurance finance agreement to USAgencies. It is also not contested that Sigur never paid an additional amount to USAgencies beyond the initial credit card transaction of $177.14 on June 9, 2012.
The accident at issue occurred on September 8, 2012, nearly two months after the latest date of the cancellation of Sigur's policy.
PROCEDURAL HISTORY
The plaintiffs' petition, filed in September of 2013, named Sigur, USAgencies and LIGA as defendants in the instant action. On February 26, 2018, LIGA filed a Motion for Summary Judgment asserting that the USAgencies auto liability policy previously issued to Sigur had been cancelled prior to the September 8, 2012 accident. Attachments to LIGA's motion for summary judgment, identified in the writ application as "Exhibit H," included a true copy of the declaration page issued to Sigur,[3] a payment receipt, a Louisiana Auto Insurance Identification Card with an effective date of June 9, 2012, an Application for Personal Automobile Insurance dated June 9, 2012, a Consumer Insurance Premium *590 Finance Agreement, a 30-Day Cancellation Notice dated June 11, 2012, an affidavit styled "proof of mailing," a complete copy of the Louisiana Private Passenger Auto Policy, and a 10-day cancellation notice dated June 18, 2012.
Plaintiffs did not file an opposition responsive to LIGA's motion for summary judgment, instead relying on its opposition to USAgencies own motion for summary judgment, which was previously filed before LIGA's intervention.[4] Plaintiffs also did not seek to contradict LIGA's statements of uncontested facts.
On October 10, 2018, the trial court denied LIGA's motion for summary judgment, separately issuing reasons for its judgment on that same date. In its reasons for judgment,[5] the trial court found that there were three genuine issue of material fact:
First, the Court finds there are differences in the dates of the policy cancellation. There are two different cancellation notices that are present. Additionally, the cancellation notices are not clear pursuant to the statute and present a genuine issue of material fact.
The next issue that presents an issue of material fact for the Court is the "Premium Finance Agreement." A genuine issue of material fact for the Court is regarding the issue and terms of the finance agreement were [sic] regarding the payment of the policy. Another genuine issue of material fact for the Court is the fact of whether or not the initial payment of $177. 00 made by the defendant, Holli Sigur, constituted a payment towards the policy and was there a policy in effect.
LIGA timely filed its Notice of Intent to seek supervisory review of the trial court's ruling on October 25, 2018, which was granted by the trial court on October 26, 2018. The instant application followed.
LAW AND ANALYSIS
Appellate courts apply a de novo standard of review in considering lower court rulings on summary judgment motions. Arceneaux v. Amstar Corp. , 15-0588 (La. 9/7/16), 200 So.3d 277, 281. Thus, we use the same criteria that govern the district court's consideration of whether summary judgment is appropriate. A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). Interpretation of an insurance policy is usually a legal question that can be properly resolved by means of a motion for summary judgment. Washington v. McCauley , 45,916 (La. App. 2 Cir. 2/16/11), 62 So.3d 173, 177, writ denied , 11-0578 (La. 4/29/11), 62 So.3d 115.
Louisiana jurisprudence provides that where an automobile liability insurer defends on the ground that the policy was cancelled prior to the date giving rise to a claim under the policy, the insurer bears the burden of establishing facts which will relieve it of liability.
*591 Accardo v. Clarendon Nat'l Ins. Co. , 99-398 (La. App. 5 Cir. 1/4/00), 751 So.2d 975, 977, writ denied , 00-0369 (La. 4/7/00), 759 So.2d 761 ; Direct Gen. Ins. Co. v. Mongrue , 04-248 (La. App. 5 Cir 8/31/04), 882 So.2d 620, 623. The insurer must show facts which constitute positive and unambiguous proof of the insured's understanding of the cancellation of the policy. Id. La. R.S. 22:1266 sets forth the notice requirements that must be followed by an insurance company in order to effect a cancellation of an insurance policy. La. R.S. 22:1266 mandates strict compliance with its statutory provisions for a valid notice of cancellation of an insurance policy. Direct Gen. Ins. Co., 882 So.2d at 622.[6] Notice is required to make the insured aware that his policy is being terminated and to afford him time to obtain other insurance protection. Id.
With respect to the trial court's finding that there is a question of whether a policy was ever in effect for Sigur, we note that this particular issue was not raised or argued by any party. To the contrary, LIGA's own statement of uncontested material facts admits:
On June 9, 2012, Affirmative Casualty Insurance Company issued a policy of automobile liability insurance to Holli Sigur, bearing policy number 6100361, with $15,000 per person / $30,000 per accident policy limits.
Additionally, the record contains a copy of the Louisiana Auto Insurance Identification Card with an effective date of June 9, 2012 issued for Sigur's policy.
An insurance policy is a contract between the parties and should be construed using the general rules of interpretation set forth in the Civil Code. Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co. , 93-0911 (La. 1/14/94), 630 So.2d 759, 763. The judicial responsibility in interpreting insurance contracts is to determine the parties' common intent. Id. The parties' intent, as reflected by the words in the policy, determines the extent of coverage. Id. Such intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical meaning. La. C.C. art. 2047. An insurance policy should not be interpreted in an unreasonable or strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Louisiana Ins. , 630 So.2d at 763.
In the instant case, the first page of the policy, in the "Agreement" section of the document stated, "If you pay your premium we agree to insure you subject to all the terms of this Policy for the coverage up to the Limits of Liability as indicated on the declarations page of this Policy." Additionally, under the "Cancellation or Non-Renewal Provisions" section, it stated:
We may cancel this Policy within the first sixty (60) days from the effective date of the insurance policy by mailing notice of cancellation to you at the address shown on the declarations page:
1. At least ten (10) days notice, if cancellation is for non-payment of premium.
2. At least thirty (30) days notice, via mail, in all other cases.
Thus, it is clear from a plain reading of the policy that any insurance provided is contingent upon payment of the premium, and that coverage can be cancelled upon non-payment of the premium.
*592 The premium finance agreement set forth the terms, the schedule of payments, and the amounts due over a six-month period, beginning on "06/18/2012." Of note, the total for the premium was itemized at $1,026.00, while the amount that would be financed under the agreement was $913.86. The complete itemization of the amount financed shows that the $177.14 initially paid by Sigur on June 9, 2012 was allocated three ways:
(4) (Less) Insurance Co. Premium Down $(112.14) (5) (Less) Insurance Co. Fees Down $(40.00) (10) Origination Fee $ 25.00
While the trial court found an issue of fact with respect to the terms of the financing agreement, in our opinion such an issue is moot when Sigur never completed the application for the finance agreement. Nevertheless, the finance application, which was sent to Sigur for completion and which she did not deny receiving, put Sigur on notice that her first premium payment aside from her deposit was due on June 18, 2012. As discussed below, even assuming that Sigur did not receive or read the application for the finance agreement, USAgencies provided the required 10-day notice which advised Sigur that her policy was being cancelled due to non-payment of the premium.
La. R.S. 22:1266 provides, in pertinent part, as follows:
(B)(1) A notice of cancellation of a policy shall be effective only if it is based on one or more of the following reasons:
(a) Nonpayment of premium.
...
(d) Nonreceipt by the insurer of an application for insurance in which a valid binder has been issued.
D. (1) No notice of cancellation of a policy to which Subsection B or C of this Section applies shall be effective unless mailed by certified mail or delivered by the insurer to the named insured at least thirty days prior to the effective date of cancellation; however, when cancellation is for nonpayment of premium at least ten days notice of cancellation accompanied by the reason shall be given. In the event of nonpayment of premiums for a binder, a ten-day notice of cancellation shall be required before the cancellation shall be effective. Notice of cancellation for nonpayment of premiums shall not be required to be sent by certified mail.
F. Proof of mailing of notice of cancellation, or of intention not to renew or of reasons for cancellation, to the named insured at the address shown in the policy, shall be sufficient proof of notice.
In reviewing USAgencies' 10-day notice in the writ application before us, we find that the notice itself conformed to the requirements of La. R.S. 22:1266. In addition, the record contains evidence, in the form of an affidavit, that the cancellation was mailed to Sigur at her home address listed in the policy. Therefore, we find sufficient proof of notice. Also, as stated previously, there is no dispute that Sigur did not make additional premium payments after receiving the 10-day notice.
The trial court also found that two effective cancellation dates set by the 10-and 30-day notices created a genuine issue of material fact. We disagree. In our reading of La. R.S. 22:1266, we see no limitation on an insurer to a single cause for cancellation of a policy. We need not reach this issue, however.
As indicated above, La. R.S. 22:1266(B)(1)(d) provides that if the reason *593 for cancellation is something other than non-payment of the premium, then notice of cancellation needs to be 30 days in advance and by "certified mail or delivered by the insurer to the named insured." Here, where the reason for the cancellation was Sigur's failure to turn in the completed application for insurance, the "certified mail" or "delivery" requirement applies. The writ application does not contain any evidence that this requirement was met and, accordingly, we find that the 30-day notice was without effect. Because we have already found a valid 10-day notice of cancellation, however, a legal basis for cancelling the policy still exists.
We find that Sigur's policy with USAgencies expired for nonpayment on June 28, 2012, at 12:01 a.m. The automobile accident, which forms the basis of the instant suit, occurred on September 8, 2012, over two months after Sigur's policy had been canceled. Because liability coverage for Sigur's vehicle through ACIC/LIGA was non-existent, LIGA's motion for summary judgment should have been granted. Accordingly, LIGA's writ application is granted, and the trial court's October 10, 2018, order denying the motion for summary judgment is reversed.
WRIT GRANTED; JUDGMENT REVERSED; SUMMARY JUDGMENT GRANTED AND CASE DISMISSED WITH PREJUDICE ONLY AS TO RELATOR/DEFENDANT, LOUISIANA INSURANCE GUARANTY ASSOCIATION

The policy was originally issued by Affirmative Casualty Insurance Company (formerly known as USAgencies Casualty Insurance Company, Inc.) However, after that insurer became insolvent on April 11, 2016, LIGA acquired all of the rights, duties, and obligations of Affirmative Casualty Insurance Company pursuant to the provisions of La. R.S. 22:2051, et seq .

Vidal is identified in the relevant affidavits as "an authorized Claims Liaison for Affirmative Insurance Services."

This attachment was originally provided in connection with the February 20, 2018 affidavit of Wanda Poche, a Claims Examiner for LIGA.

As noted above, LIGA was also named as a defendant in plaintiffs' original petition.

We note that appellate Courts do not review reasons for judgment as a part of the judgment itself. La. C.C.P. art. 1918 ; Burmaster v. Plaquemines Parish Government , 07-1311 (La. 8/31/07), 963 So.2d 378, 379. The written reasons for judgment are merely an explication of the trial court's determinations. State in the Interest of Mason , 356 So.2d 530, 532 (La. App. 1 Cir. 1977). The Louisiana Supreme Court has held, however, that a court of appeal can use reasons for judgment to gain insight into the district court's judgment, and we refer to them now for that purpose. See, Wooley v. Lucksinger , 09-0571 (La. 4/1/11), 61 So.3d 507.

In Direct Gen. Ins. Co. v. Mongrue , supra , the Court cited to the former version of La. R.S. 22:1266, which was La. R.S. 22:636.1.