ARMSTRONG, Judge.
This is an appeal from a summary judgment dismissing three of five defendants in a personal injury action. Specifically, the trial court dismissed Prince of Peace Church, the Archdiocese of New Orleans and their liability insurer, the Catholic Mutual Relief Society. Because we find no error of law or genuine issue of material fact, we affirm.
Juliette Galjour St. Pierre filed this suit on behalf of, and as the legal tutrix of, Gregory Walter Greenwood. Greenwood was injured at a church fair held at the outdoor premises of defendant Prince of Peace Church. Prince of Peace Church contracted, in writing, with defendant Frey Amusement to “present their [Frey’s] company, consisting of high class pay shows, riding devices and concessions”. The contract also provides that Prince of Peace Church “agrees to furnish water, police protection, and a suitable location of grounds”. Frey Amusement was to pay Prince of Peace Church 30% of the gross receipts after sales tax on ticket sales for all the Frey Amusement shows and riding devices at the fair and 25% of the gross receipts from the pop corn wagon. The fair was to last for three days and nights.
On the final night of the fair, Greenwood, who was sixteen years old at the time, attended the fair with several friends including Tino Vekic, George Henry Arch, Jr. and James Peter Coll. At around 10:40 p.m. or 11:00 p.m., when the rides were closed for the night (and thus for the end of the fair as it was the fair’s last night), but the concessions were still open, Greenwood and Coll decided to go on one of the rides known as the superslide. This superslide was simply a very large sliding board, with a stairway up one side to the top, and several lanes so that several persons could slide at one time. The superslide can be disassembled into several sections so as to be transplanted by truck.
At the time Greenwood and Coll decided to go on the superslide, the ticket takers were gone and the lights were turned out at both the superslide and the other rides. The ticket takers had been present, and the lights had been on, earlier when the rides were open. Greenwood, Coll and the other companions could not help but be aware that the superslide and the other rides were closed. Furthermore, by the time Greenwood and Coll decided to go on the superslide, barriers had been placed at the entrance to the super-slide.
Greenwood or one of his companions removed the barriers from the entrance to the superslide and Greenwood and Coll climbed up to the stairs to the top. Both slid down. Greenwood slid on his knees and Coll slid on his stomach. Apparently the disassembly had begun because a section of it had been moved which left a gap in the superslide. Greenwood and Coll fell through the gap to the ground. Coll suffered only a bruised chest but Greenwood suffered a partially broken nose, cuts on his face and head and a partial break of a bone in one of his forearms. Immediately after this accident, Greenwood, when asked what had happened to him by St. Bernard Sheriffs deputies at the fair who observed his injuries, stated that he had fallen over a parking device.
The above description of the events at the fair is based upon the affidavits of Greenwood’s companions Vekic and Arch, and upon Coil’s deposition, which all were filed in support of the defense motion for summary judgment. The description of Greenwood’s injuries is based upon Greenwood’s discovery responses in the record. Greenwood did not submit any affidavits, depositions or other discovery materials in opposition to the motion for summary judgment.
The basis of the defense motion for summary judgment was that Prince of Peace Church and the Archdiocese of New Orleans did not have any control over the superslide or other rides and that, instead, Frey Amusement had complete control over the super-slide as well as the other rides. In support *360 of this point, the affidavit of Martin J. Frey, II was filed and it stated, in pertinent part:
3. By written contract with Prince of Peace Church, on September 30, 1989, Frey Amusements, did own, exclusively control and operate its amusement rides on the premises known as Prince of Peace Church at a church fair.
4. No representative of the Archdiocese or of Prince of Peace Church maintained any control or supervision of the Frey Amusement rides at the aforesaid fair.
5. That pursuant to the Agreement, Frey Amusements was responsible for the assembly, operation and disassembly of its rides and neither the Archdiocese nor Prince of Peace Church was responsible for these activities.
Greenwood does not directly challenge the defense point that Frey Amusement had sole and complete control over the superslide. In fact, paragraph 6 of Greenwood’s petition states: “Said ‘super-slide’ was located on the grounds of Prince of Peace Church and [was] owned, assembled, disassembled and operated by Frey Amusement, pursuant to a contract entered into between said company and Prince of Peace Church” (emphasis added).
The standard for granting a motion for summary judgment, and for appellate review of a district court decision to grant a summary judgment, recently was summarized by the Supreme Court:
Appellate courts review summary judgments de novo, under the same criteria which governs the district court’s consideration of the appropriateness of summary judgment. Schroeder v. Board of Sup’rs of Louisiana State of University, 591 So.2d 342 (La.1991). The criteria set forth in the Code of Civil Procedure directs that plaintiff or a defendant in the principal or any incidental action, with or without supporting affidavits, may move for summary judgment in his favor for all or part of the relief for which he has prayed. LSA-C.C.P. art. 966(A).
Judgment on the motion is properly granted only if the pleadings, deposition, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine issue of material fact and the mover is entitled to summary judgment as a matter of law. LSA-C.C.P. art. 966(B); Penalber v. Blount, 550 So.2d 577 (La.1989); Vermilion Corp. v. Vaughn, 397 So.2d 490 (La.1981). Because the mover has the burden of establishing that no material factual issue exists, inferences to be drawn from the underlying facts contained in the record must be viewed in the light most favorable to the party opposing the motion. Schroeder v. Board of Sup’rs of Louisiana State University, supra. A fact is material if its existence or non-existence may be essential to the plaintiffs cause of action under the applicable theory of recovery. Penalber v. Blount, supra.
Potter v. First Federal Savings and Loan Ass’n of Scotlandville, 615 So.2d 318, 325 (La.1993). See also, Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772, 774-75 (La. 1980) (when motion for summary judgment is properly supported, burden shifts to opposing party to present evidence showing that material facts are still at issue).
The defense motion for summary judgment was properly supported as to the point that Frey Amusement, not the church, had exclusive control over the superslide and there is no rebuttal by Greenwood. In view of the fact that the church had no control at all over the superslide, we believe that the church cannot be found liable for Greenwood’s injury. The analogous caselaw is sparse. In Hauth v. Iacoponelli, 251 La. 410, 204 So.2d 767 (1967), the plaintiff sued a supermarket for an injury to his child suffered on a coin operated mechanical horse located in the supermarket. The horse was owned and operated by a defendant other than the supermarket. The supermarket allowed the coin operated mechanical horse on its’ premises in exchange for 40% of the' gross revenue. The Supreme Court held that the supermarket could not be liable for the child’s injury.
From our appreciation of the evidence we think the relationship between Schweg-mann and Iacoponelli in the operation of the mechanical horses was not one of joint venture. According to the record the horses were owned and operated by Iaco- *361 ponelli in the supermarket at specified places in accordance with the verbal lease agreement with Schwegmann who was to receive 40% of the gross revenue as rental. The operation was conducted pursuant to a license issued in Iacoponelli’s name and was in his exclusive control; he alone decided when and if a machine required maintenance or replacement, and personally collected the money from the coin boxes. Schwegmann had no control whatsoever or was he liable for any cost for repairs or losses, if any.
204 So.2d 769. See also Sam v. Theriot, 49 So.2d 484 (La.App. 1st Cir.1950) (owner of fair ground, who leased it to operator of “Hell Driving” exhibition in return for 20% of the gate receipts, could not be liable to spectator injured when car went into stands).
Greenwood’s only real argument is that the contract between the church and Frey Amusement provided for the church to furnish “police protection” during the fair. However, an affidavit of Carol Breaud, an employee of Prince of Peace Church, establishes that the church did furnish police protection by contracting with the St. Bernard Parish Deputy Corps to supply St. Bernard sheriffs deputies to patrol the fair. More importantly, the church’s furnishing “police protection” to the fair in general did not give the church any control over or responsibility for the superslide. Greenwood may be implying that the church is responsible because the sheriffs deputies did not prevent Greenwood from going on the superslide. Greenwood was sixteen years old at the time, there were barriers to the entrance to the super-slide in place, the superslide lights were out and it obviously was closed and the ticket takers were gone. If the church’s provision of police protection to the fair in general did create any duty to anyone to keep them off the superslide, it did not extend to Greenwood under these circumstances.
For the foregoing reasons, we affirm the judgment of the trial court.

AFFIRMED.