WILLIAMS, J.
kin this personal injury case, the district court denied a supplemental motion for summary judgment filed by defendant, State Fair of Louisiana (“State Fair”). We granted supervisory writs to review the correctness of the district court’s ruling. After further review, we recall the writ as improvidently granted. We affirm the district court’s ruling and remand this matter for further proceedings.
FACTS
Defendant, Pine Belt Multipurpose Community Action Acquisition Agency, Inc. (“Pine Belt”), operates a Head Start preschool program in Jonesboro, Louisiana. On November 2, 2011, Pine Belt took children, including plaintiffs’ son, Sheldon Renard Lewis (“Sheldon”), on a field trip to the State Fair of Louisiana in Shreveport.[1] The Twin-Ring Demolition Derby Carnival Ride (“Twin-Ring”) was one of the featured rides in the Kiddie Land area of the carnival.[2] Sheldon (and others in the Pine Belt group) rode the Twin-Ring. When the ride ended, the group was in the process of exiting the Twin-Ring when it went into motion.[3] Sheldon became trapped between a component of the Twin-Ring and a rotating platform on the floor of the ride; he sustained catastrophic injuries.[4]
| «.On November 7, 2011, plaintiffs, Lak-hesia Lewis and Sheldon Hallmon, individually and as natural tutors of Sheldon, filed a lawsuit against defendants, Pine Belt, State Fair, Lowery Carnival Compa *564 ny, Inc. (“Lowery”), Bryan Pellegrin and Moser Rides S.r.l. (“Moser”).[5] As stated above, Pine Belt was the Head Start program where Sheldon attended and whose employees took the children on the field trip; State Fair was the owner, host and promoter of the fair; Lowery was the owner, installer and operator of the carnival rides at the fair; Moser was the manufacturer of the Twin-Ring;[6] Pellegrin, a Lowery employee, was operating the Twin-Ring at the time of the incident.
In the lawsuit, plaintiffs made numerous specific allegations of negligence against Pine Belt, Lowery and Pellegrin. With regard to State Fair, plaintiffs alleged that it was “the owner and/or exercised care, custody and control over certain property ... where the 105th State Fair of Louisiana [was] being held” and had contracted with Lowery “to set up and operate” the Twin-Ring. However, the plaintiffs did not make any specific allegations of negligence against State Fair.
On November 8, 2011, plaintiffs filed a first amended petition, alleging that their “injuries and damages were caused solely, legally and proximately by the negligence and recklessness of defendants, Pine Belt, IsLowery, State Fair, and Bryan Pelleg-rini]” Plaintiffs also asserted the doctrine of res ipsa loquitur. Again, plaintiffs did not make any specific allegations of negligence against State Fair. On November 17, 2011, plaintiffs filed a second amended petition, seeking to enjoin defendants from removing the Twin-Ring from Caddo Parish, and/or altering or disposing of the ride.[7] Again, plaintiffs did not make any allegations of negligence against State Fair.
On December 7, 2011, State Fair moved for summary judgment arguing, inter alia, that it could not be held liable for any alleged fault or negligence of Lowery or its employees because it did not hire or train the ride operators; it did not have the power to dismiss Lowery’s employees or direct their actions; and Lowery and its employees were not agents of State Fair.[8] *565 |40n March 6, 2012, Pine Belt opposed the State Fair’s motion for summary judgment, arguing that the motion was premature as “very little discovery has been conducted in this matter[.]” Pine Belt also argued that the State Fair had control over the entire fair, including the operation of the carnival section.
On March 8, 2012, plaintiffs filed a third amended petition, alleging the following in relation to the movant, State Fair:
[[Image here]]
“10A.”
A contributing cause of this accident is the fault and negligence of the defendant, State Fair, who at all times had control and guard over the 105th Louisiana State Fair through [its] contractual relationship with Lowery Carnival. State Fair’s negligence is specifically, but not exclusively, described as follows:
A. Failure to exercise reasonable and safe care, custody and control over property where the 105th Louisiana State Fair was being held by allowing the use of the Twin Ring Demolition Derby carnival ride without a safety switch to deenergize the control panel;
B. Hosted, advertised and promoted the 105th Louisiana State Fair and as a result owed a general duty to all patrons to provide safe premises and rides and failed to properly inspect all rides for safety switches and have trained and qualified operators;
C.Negligently performed [its] contractual obligation with Lowery Carnival by failing to ensure that Lowery Carnival had the amount of liability insurance as mandated by State Fair’s Board of Directors;[ 9]
IfiD. By negligently performing [its] contract with Lowery by ignoring the fact that Lowery faxed to State Fair insufficient proof of liability insurance[,] contrary to [its] contractual obligation to State Fair and all patrons including [plaintiffs].
E. By failing to exercise reasonable care for the safety of the patrons, particularly [plaintiff] by not insuring that Lowery had an adequate number of trained employees operating the Twin Ring Demolition Derby carnival ride;
F. By failing to exercise reasonable care to protect the patrons of the 105th Louisiana State Fair from the hands of Lowery’s employees [who] were not appropriately trained and [its] equipment which did not have the appropriate safeguards to prevent this accident.
Subsequently, on May 80, 2012, State Fair’s motion for summary judgment was heard. By judgment dated June 27, 2012, the district court found that Lowery was an independent contractor; therefore, State Fair was not vicariously liable for *566 the actions of Lowery and its employees. The court dismissed “the claims of vicarious liability of State Fair for the actions of Lowery Carnival Company!.]” However, the court granted only partial summary judgment, finding that State Fair’s motion did not address the claims of negligence asserted in plaintiffs’ third amended petition (which was filed three months after State Fair’s motion for summary judgment).
On February 25, 2013, State Fair filed a supplemental motion for summary judgment, arguing that fair owners do not conduct independent | (¡inspections of carnival rides or ride operators; the carnival rides were inspected by the State Fire Marshal; an independent inspector verified that the ride operators were qualified to operate the rides. Additionally, State Fair argued that plaintiffs have no cause of action against it for negligence and it is not liable for Lowery’s alleged failure to provide the proper amount of liability insurance.
Initially, plaintiffs did not respond to State Fair’s supplemental motion for summary judgment. However, on April 5, 2013, Pine Belt opposed State Fair’s motion, arguing that (1) any independent negligence of State Fair is a question of fact that is not appropriate for summary judgment; (2) State Fair only partially addressed the allegations of negligence made against it; (3) the testimony of Chris Gior-dano confirmed there are factual issues pertaining to the potential liability of State Fair that must preclude summary judgment; and (4) the cases cited by State Fair do not support summary judgment in its favor. In support of its opposition, Pine Belt attached the copy of the transcript of the January 27, 2012 deposition of Chris Giordano, the president of State Fair. Specifically, Pine Belt contended:
Mr. Giordano confirmed in his deposition that State Fair is the entity that puts on the Louisiana State Fair, and promotes and advertises the State Fair. This includes promotion and advertising of the carnival operation at the State Fair. State Fair is the promoter of their event and is directly responsible for creating interest in and attendance at the State Fair[.] Mr. Giordano was present on the fairground at the time the incident at issue occurred, he immediately proceeded directly to the scene upon being notified, and he personally called the State Fire Marshal Inspector from his own cell phone to call him to the scene of the incident!.] State Fair undoubtedly controls and oversees the event and the premises where this incident took place, the State Fair of Louisiana, including the carnival operation, and State |7Fair even exercises significant control over Lowery’s activities in providing and operating rides in the carnival attraction. As such, significant questions of fact remain as to whether independent negligence on the part of State Fair may have caused or contributed to the accident and/or injuries complained of.
Thereafter, State Fair filed a response to Pine Belt’s opposition; Pine Belt filed a supplemental response; State Fair filed yet another response. On August 23, 2013, plaintiffs filed a memorandum in opposition to State Fair’s supplemental motion for summary judgment, adopting the “argument and evidence” set forth in the oppositions filed by Pine Belt.
State Fair’s supplemental motion for summary judgment was heard and denied on August 26, 2013. In its oral reasons, the district court stated:
I certainly can appreciate why the State Fair would not want to subject or be subjected to such matters or claims in a major lawsuit of this nature. *567 However, I’m not persuaded that there are some genuine issue of material facts, which I’m not saying can be developed, but I’m just saying — that would be developed, but whether it can or not for purposes of comparative fault, I just don’t know. And because I believe that there are genuine issues of material fact, the Court is guarded at this juncture to grant the supplemental motion. And for that reason, the Court will deny the motion.
Thereafter, the court signed a judgment which provided, in part, “The Court finds that [the] evidence presented demonstrates genuine issues of material fact preventing summary judgment in this matter with respect to the allegations of independent negligence and comparative fault on the part of Defendant, State Fair of Louisiana, Inc.”
State Fair sought supervisory review of the trial court’s judgment by this Court on September 19, 2013. This Court granted a supervisory writ | ^herein to review the correctness of the lower court’s decision.
DISCUSSION
State Fair contends the district court erred in denying its supplemental motion for summary judgment. It argues that there are no genuine issues of material fact in dispute. According to State Fair, pursuant to its contract, Lowery was solely responsible for providing the rides and for the employees who operated the rides. State Fair argues that because it did not have any control over Lowery or its employees, it could not be found negligent.
Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and that the movant is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). A genuine issue of material fact is one as to which reasonable persons could disagree. Argonaut Great Cent. Ins. Co. v. Hammett, 44,308 (La.App.2d Cir.6/3/09), 13 So.3d 1209, writ denied, 2009-1491 (La.10/2/09), 18 So.3d 122.
When a motion for summary judgment is properly made and supported, the adverse party may not rest on the mere allegations or denials of his pleading, but he must set forth specific facts showing that there is a genuine issue for trial. LSA-C.C.P. art. 967(B). This requires the plaintiff to make a positive showing of evidence creating a genuine issue as to an essential element of her claim; mere speculation is not sufficient. Babin v. Winn-Dixie Louisiana, Inc., 2000-0078 (La.6/30/00), 764 So.2d 37; Cavet v. Louisiana Extended Care Hosp., 47,141 (La.App.2d Cir.5/16/12), 92 So.3d 1122. If the adverse party fails to produce the required factual support 1 flto show that she will be able to meet her evidentiary burden at trial, there is no genuine issue of material fact and summary judgment is appropriate. LSA-C.C.P. art. 966(C)(2); Cavet, supra; Russell v. Eye Associates of Northeast Louisiana, 46,525 (La.App.2d Cir.9/21/11), 74 So.3d 230.
Appellate courts review summary judgments de novo, using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. Argonaut Great Cent. Ins. Co., supra. Summary judgments are favored under Louisiana law; however, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion and doubt must be resolved in the opponent’s favor. LSA-C.C.P. art. 966(A)(2). Argonaut Great Cent. Ins. Co., supra.
In moving for summary judgment, State Fair relied heavily on cases in which courts have held that the owners of carni *568 val rides have exclusive control over the rides; therefore, hosts and/or sponsors of a fair cannot be held liable for injuries sustained on the rides. See, St. Pierre v. Frye Amusement, 93-0653 (La.App.4th Cir.3/29/94), 635 So.2d 358[10] and Lambert v. Pepsico, 96-0733 (La.App.1st Cir.8/6/97), 698 So.2d 1031, writ denied, 97-2272 (La.9/19/97), 701 So.2d 178.[11]
In the instant case, as stated above, in granting summary judgment in favor of State Fair on June 27, 2012, the district court found that Lowery was an independent contractor, and, therefore, State Fair was not vicariously liable for the actions of Lowery or the actions of Lowery’s employees. That ruling is final and is not at issue in this appeal.
At issue herein is State Fair’s argument that plaintiffs will be unable to meet their burden of proving that it is independently negligent (independent of Lowery’s alleged negligence) or comparatively at fault. Plaintiffs’ theory of recovery was based on the negligence of State Fair as the owner and promoter of the fair and as the owner of the premises on which the fair was held. According to Pine Belt, as the owner and promoter, State Fair was responsible for all critical decisions with regard to the fair; therefore, it is responsible for everything that occurred therein. Thus, we l^will look to the applicable substantive laws to determine whether there is a genuine issue of material fact.
Negligence claims are subject to the duty-risk analysis. Under the duty-risk analysis, the plaintiff must prove that (1) the defendant had a duty to conform his conduct to a specific standard; (2) the defendant breached that duty; (3) the defendant’s conduct was a eause-in-fact of the plaintiffs injuries; (4) the defendant’s conduct was the legal cause of the plaintiffs injury; and (5) actual damages. Pinsonneault v. Merchants & Farmers Bank & Trust Co., 2001-2217 (La.4/3/02), 816 So.2d 270; Cavet, supra.
*569 In any action for damages where a person suffers injury, death or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person’s insolvency, ability to pay or immunity by statute. ■ LSA-C.C. art. 2323(A). The provisions of LSA-C.C. art. 2323(A) shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability. LSA-C.C. art. 2323(B).
Generally, the determination of whether negligence exists in a particular case is a question of fact; therefore, cases involving a question of negligence ordinarily are not appropriate for summary judgment. Pruitt v. Nale, 45,483 (La.App.2d Cir.8/11/10), 46 So.3d 780; Freeman v. Teague, 37,932 (La.App.2d Cir.12/10/03), 862 So.2d 371. This principle extends to a question of comparative fault as well. Pruitt, supra.
| 12As stated above, the district court denied State Fair’s supplemental motion for summary judgment, finding that genuine issues of material fact exist with regard to State Fair’s alleged independent negligence and comparative fault. However, the court did not make any specific determination with regard to the existence of a duty or breach of that duty.
In opposition to State Fair’s motion, Pine Belt introduced excerpts from the deposition of Chris Giordano, the president of State Fair. Giordano testified at length with regard to the contract between State Fair and Lowery, as well as the longstanding relationship between the two entities. He stated that he had “complete trust in Lowery Carnival Company to handle the carnival operation as they deemed fit.” However, he admitted that State Fair had never checked to ensure that Lowery completed the inspections of the rides. Gior-dano also testified that State Fair was responsible for controlling most of the aspects of the fair, including choosing vendors and hours of operation. He further stated that he and other State Fair employees were generally present on the fairgrounds during the fair’s hours of operation; however, State Fair did not have any policy which required any of its employees to be present in the carnival area.
With regard to the accident at issue, Giordano testified as follows: he was present at a different location on the fairgrounds at the time Sheldon was injured; one of his employees called him to the site of the injury; when he arrived, the Shreveport Fire Department and one of Lowery’s employees were working to extricate Sheldon from the ride; during the rescue attempts, he placed a call to the state fire marshal’s office to report the incident; a 113deputy fire marshal arrived on the scene.
Pursuant to the contract between State Fair and Lowery, State Fair agreed to:
1. Furnish sufficient locations upon its fairgrounds in Shreveport, Louisiana for [Lowery] to erect its entire show consisting of riding devices, concessions, games and equipment.
2. Order all ride coupons and armbands and distribute to [Lowery] as needed but bill [Lowery] for costs of coupons and armbands.
3. Advertise and promote [Lowery’s] show as [the] official carnival operation of the State Fair of Louisiana.
In turn, Lowery agreed to:
1. Present its entire combination of shows, riding devices, concessions and games.
*570 2. Submit an equipment list with contract, including a Giant Ferris Wheel.
[[Image here]]
23. Give to [State Fair] full censorship over all shows, rides, concessions and games; and should any of these be found unsatisfactory to local laws or to [State Fair], the offending show, ride, concession or game shall be closed by [Lowery] upon request of [State Fair].
[[Image here]]
[Lowery] agrees that each day and subsequent to any repair or maintenance shut down, before commencing operations of any amusement ride or attraction, [Lowery] shall cause each ride owner to conduct an inspection of, and submit to [State Fair] a complete manufacturer’s operator/inspector manual check list for such ride. If no such list is available, then [Lowery] shall require each ride owner to submit to [State Fair] a completed “Ride Inspection Form” in lieu of the manufacturer’s operator/inspection manual check list. Said inspection shall be conducted by and each ride owner or said ride owner’s agent, servants or employees shall complete said | Mform. [Lowery] agrees that it will require each ride owner to comply with the provisions of this paragraph and that such compliance is the sole responsibility of [Lowery] in its capacity as an independent contractor. Should any clam be brought directly or indirectly against [State Fair] for [Lowery’s] conduct relating directly or indirectly to any of the provisions of this paragraph, then [Lowery] shall defend, indemnify and hold harmless [State Fair], its officers, directors and employees for such claim and pay any expenses, including attorney’s fee[s], incurred by [State Fair] in defending such claims.
It is undisputed that Sheldon was a visitor to the State Fair.[12] Although this is a close case, we cannot say the district court erred in denying the supplemental motion for summary judgment. As stated above, State Fair cited multiple cases with regard to the liability of carnival owners and/or ride owners; however, those cases do not apply herein. It is undisputed that the Twin-Ring carnival ride was not owned, maintained, assembled or operated by State Fair. However, the fair itself was owned, controlled, and in a large part, operated by State Fair. Under the facts of this negligence case, we cannot say that the owner of the ride was solely liable for any and all injuries, while State Fair, the owner, host and overseer of this fair, does not bear any liability for the damages suffered by plaintiffs. We note that State Fair also held itself out to the public as the owner, promoter and host of a safe fair. Additionally, pursuant to the contract, State Fair | ^agreed to “advertise and promote [Lowery’s] show as [the] official carnival operation of the State Fan- of Louisiana.” Furthermore, State Fair contractually mandated that Lowery perform, or cause to be performed, daily inspections of all rides, while taking no responsibility for ensuring that Lowery did so. As the *571 owner/host/promoter of the fair, from the public’s perspective, State Fair had a duty to at least ensure that the rides had safety measures in place to prevent another child or customer from gaining access to the control panel and rides. To say that State Fair had no responsibility for the operation of the rides does not alleviate its responsibility to ensure that all of the rides were safe from unauthorized tampering when the rides were in the “off’ position. Accordingly, we conclude that genuine issues of material fact exist in this negligence case as to whether there is a causal connection between State Fair’s duty to provide a safe premises and safe rides, and the injuries suffered by plaintiffs and their son. Consequently, the district court did not err in denying State Fair’s supplemental motion for summary judgment. We shall recall the writ as improvidently granted and remand this matter for further proceedings.
CONCLUSION
For the foregoing reasons, we recall this writ as improvidently granted; this matter is remanded for further proceedings. Costs are assessed to defendant, State Fair of Louisiana.
WRIT RECALLED; REMANDED FOR FURTHER PROCEEDINGS.

. At the time of the incident, Sheldon was four years old.

. Kiddie Land was located in the carnival section of the state fair; it was designated for patrons with small children.

. Plaintiffs alleged that the ride operator left the ride’s control panel unattended; one of the other children from the Pine Belt group gained access to it and activated the ride.

.Initial attempts to rescue Sheldon, including the use of the Jaws of Life, were unsuccessful. He stopped breathing for a prolonged period of time, and, as a result, suffered severe brain damage.

. Moser was added as a defendant in plaintiffs’ fourth amended petition. The instant writ application pertains to the supplemental motion for summary judgment filed by defendant, State Fair. During the oral argument before this Court, counsel for Lowery argued in favor of State Fair; however, plaintiffs’ allegations against Lowery and the other defendants are not at issue in this writ application and are not addressed in this opinion.

. In another decision under the same docket number rendered by this Court, a panel of this Court found that the district court did not have personal jurisdiction over the defendant manufacturer, Moser. Consequently, this Court reversed the trial court and dismissed the defendant, Moser, from the lawsuit.

. In the original petition, plaintiffs stated:
20.
"[D]efendants, State Fair, and/or Lowery, presently ha[ve] possession of the Twin-Ring Demolition Derby carnival ride involved in and responsible for this incident and it is imperative that this physical evidence be maintained and controlled without any alteration so as to preserve evidence necessary for the prosecution in handling of this matter. Petitioners request that the Honorable Court order the defendants herein to show cause why the State Fair or an independent party should not be appointed the keeper of the carnival ride, including all equipment and parts until all necessary inspections and documentation can be completed, and that all parties be enjoined from altering, disposing of, and removing any parts from the Twin-Ring Demolition Derby and all of its equipment until further orders of this Court.

.State Fair also filed an uncontested statement of facts and a memorandum in support thereof. Additionally, State Fair attached a copy of the April 26, 2012 deposition of Tony Lowery (president of Lowery), in which he attested that State Fair did not have any involvement with the installation or operation of the ride or with the hiring and training of Lowery’s employees; an affidavit from Chris *565 topher Giordano (president of State Fair), in which he attested that State Fair did not have anything to do with the installation or operation of the ride involved in the accident and that State Fair did not have anything to do with the hiring or training of Lowery’s operator of the ride in question; and a copy of the contract between State Fair and Lowery.

. Pursuant to the contract, Lowery agreed to: Furnish an acceptable certificate of Insurance supplying evidence of insurance protecting the First Party (State Fair) from any cause or action from damages caused by reason of Second Party's (Lowery) operations. Said insurance is to cover carnival liability at an amount less than 10 million dollars and comprehensive liability on automobiles and worker’s compensation, with basic limits of $100,000; $300,000 bodily injury liability and $100,000 property damage with limits of $5,000,000 in excess of underlying. Named as additional insured will be State Fair of Louisiana, officers and directors, and the City of Shreveport and its agents.

. In St. Pierre, supra, the plaintiff's son was injured on a "superslide” at a church fair. Pursuant to the contract between the amusement company and the church, the amusement company agreed to provide and operate the carnival rides; the church agreed to furnish a suitable location, water and police protection. The district court granted summary judgment in favor of the church; the court of appeal affirmed, stating:
[Fjrey Amusement, not the church, had exclusive control over the superslide and there is no rebuttal by [the plaintiff]. In view of the fact that the church had no control at all over the superslide, we believe that the church cannot be found liable for [the plaintiff's] injury.
Id., at 360.

. In Lambert, supra, multiple patrons at the 1993 Super Fair suffered burns when a carnival ride caught fire while in motion and failed to stop due to mechanical problems. The plaintiffs filed suit against all entities associated with the fair, including the owners, operators, sponsors, promoters, inspectors and insurers. The defendants, Delta Beverage Group, Inc. and Pepsi/Seven-Up Beverage Group of Louisiana, were named in their capacity as sponsors or promoters of the fair. The evidence established that Murphy Enterprises, the entity that provided the carnival rides, was responsible for erecting, operating and dismantling the rides. The beverage companies moved for summary judgment; the district court denied the motion; the court of appeal denied the defendants' application for supervisory writs; the Supreme Court granted the defendants' writ application and remanded the matter to the court of appeal. On remand, the court concluded that the beverage companies could not be held liable for the patrons' injuries because they did not have custody or control over the rides. The court stated:
[T]he plaintiffs have failed to establish any ‘facts’ which would defeat the conclusion that under St. Pierre, a fair ‘sponsor’ cannot be held liable for rides and events over which he has no control. We find nothing to convince us that the defendants were anything other than a 'sponsor.'
Id., at 1032.

. The owner of a premises owes a duty to visitors to exercise reasonable care for their safety commensurate with the particular circumstances involved. This duty has typically been applied to slip-and-fall cases. See, Holden v. Louisiana State University Medical Center in Shreveport, 29,268 (La.App.2d Cir.2/28/97), 690 So.2d 958, writ denied, 97-0797 (La.5/1/97), 693 So.2d 730; Reynolds v. St. Francis Medical Center, 597 So.2d 1121 (La.App. 2d Cir.1992). Further, the owner of a commercial establishment has an affirmative duty to keep the premises in a safe condition; however, he is not the insurer of the safety of his patrons and is not liable every time an incident occurs. See, Harrison v. Horseshoe Entertainment, 36,294 (La.App.2d Cir.8/14/02), 823 So.2d 1124; Turner v. Brookshire Grocery Co., 34,562 (La.App.2d Cir.4/4/01), 785 So.2d 161.