Judgment rendered April 22, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,467-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

EMERSON AND COLETTE                          Plaintiffs-Appellants
COLEMAN, INDIVIDUALLY
AND ON BEHALF OF THE
MINOR, NAKHIA COLEMAN

versus

LOWERY CARNIVAL                              Defendants-Appellees
COMPANY, CRABTREE
AMUSEMENTS, INC., T.H.E.
INSURANCE COMPANY, AND
THE STATE FAIR OF
LOUISIANA

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 535-190

Honorable Craig Owen Marcotte, Judge

* * * * *

LAW OFFICES OF                    Counsel for Appellants,
JACK M. BAILEY, JR.               Emerson and Colette
By: Jack M. Bailey, Jr.           Coleman, Individually
    Jack M. Bailey, III           and on Behalf of the
                                  Minor, Nakhia Coleman


THOMAS, SOILEAU, JACKSON,         Counsel for Appellee,
BAKER & COLE, L.L.P.              The State Fair of Louisiana
By:  Steven E. Soileau
    Thomas Soileau Jackson

LAW OFFICES OF
THOMAS R. HIGHTOWER, JR.
By: Thomas R. Hightower, Jr.
   Patrick Wade Kee
   Thomas R. Hightower, III
   Charles T. Texada, Jr.

Counsel for Appellees,
Lowery Carnival Company,
Crabtree Amusements, Inc.,
and T.H.E. Insurance Company

\* \* \* \* \*

Before PITMAN, STEPHENS, and McCALLUM, JJ.

**STEPHENS, J.**

Plaintiffs, Emerson and Colette Coleman, individually and on behalf of their minor child, Nakhia Coleman, appeal judgments by the First Judicial District Court, Parish of Caddo, State of Louisiana. Those judgments granted motions for summary judgment in favor of defendants, The State Fair of Louisiana, Lowery Carnival Company, and T.H.E. Insurance Company, and denied plaintiffs' motion for leave to file an amended and supplemental petition. For the following reasons, the judgments of the trial court are reversed in part and affirmed in part.

## FACTS AND PROCEDURAL HISTORY

This matter arises out of a personal injury suit filed by Emerson and Colette Coleman, individually and on behalf of their minor child, Nakhia (the "Colemans"), against The State Fair of Louisiana ("State Fair"), Lowery Carnival Company ("Lowery"), Crabtree Amusement, Inc. ("Crabtree"), and T.H.E. Insurance Company ("T.H.E."), the liability insurer for Lowery and Crabtree. In their petition for damages, the Colemans allege that on October 23, 2008, Nakhia, who was two years old at the time, fell approximately eight feet from a carnival ride at the state fair in Shreveport, Louisiana. According to the Colemans, upon falling, Nakhia struck her head on the barricade surrounding the ride and sustained a traumatic brain injury, which resulted in recurring epileptic seizures.

State Fair is a private corporation known to be the owner, host, and promoter of the state fair, an annual event held in Shreveport, Louisiana, which includes a carnival, livestock show, rodeo, and other exhibits and concessions. State Fair entered into a contract with Lowery (the "contract") to install and operate carnival rides at the fair. Lowery, in turn, entered into

a verbal "handshake" agreement with Crabtree (the "agreement") to assist Lowery in fulfilling the contract. The Colemans' petition contained general allegations of negligence against the defendants collectively for: breach of duty of care; failure to make sure Nakhia was the right age, height, size, and weight to safely ride the specific carnival ride from which she fell; failure to securely strap Nakhia into the ride cart; failure to stop the ride in time to prevent injury to Nakhia; and, failure to properly inspect, repair, or maintain rides to prevent such injuries to Nakhia. They also alleged the doctrine of *res ipsa loquitur*.

After several years of litigation and discovery, Lowery and T.H.E. (in its capacity as Lowery's insurer) filed a motion for summary judgment, followed shortly by State Fair's motion for summary judgment. Both Lowery and State Fair argued the Colemans could not establish one of the necessary elements to support their claims. Specifically, both defendants asserted they did not own, operate, or have custody or control of either the ride at issue or its operator. Three days prior to the hearing on the motions for summary judgment, the Colemans filed a motion for leave of court to file a second amended, supplemental, and restated petition, which motion was denied. Following arguments on the motions for summary judgment, but prior to the trial court's ruling, the Colemans filed a motion for leave to file a third amended and supplemental petition. Thereafter, the trial court granted both motions for summary judgment and dismissed State Fair, Lowery, and T.H.E. (only in its capacity as Lowery's insurer) from the proceedings. A final judgment in accordance with the trial court's ruling on the motions for summary judgment was filed on August 21, 2019. Issued on that same date was a separate judgment denying the Colemans' motion for

2

leave to file a third amended and supplemental petition. This appeal by the Colemans ensued.[1]

## DISCUSSION

### *Legal Principles*

Appellate courts review motions for summary judgment *de novo*, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Peironnet v. Matador Res. Co.*, 2012-2292 (La. 6/28/13), 144 So. 3d 791; *Bank of Am., N.A. v. Green*, 52,044 (La. App. 2 Cir. 5/23/18), 249 So. 3d 219. We view the record and all reasonable inferences to be drawn from it in the light most favorable to the nonmoving party. *Hines v. Garrett*, 2004-0806 (La. 6/25/04), 876 So. 2d 764.

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Samaha v. Rau*, 2007-1726 (La. 2/26/08), 977 So. 2d 880; *Driver Pipeline Co. v. Cadeville Gas Storage, LLC*, 49,375 (La. App. 2 Cir. 10/1/14), 150 So. 3d 492, *writ denied*, 2014-2304 (La. 1/23/15), 159 So. 3d 1058. A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). A genuine issue is one about which reasonable persons could disagree. *Hines*, *supra*; *Franklin v. Dick*, 51,479 (La. App. 2 Cir. 6/21/17), 224 So. 3d 1130. In determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony, or weigh evidence. *Chanler v. Jamestown Ins. Co.*,

---

[1] Notably, Crabtree remains a defendant in the suit, and the claims against it are pending in the trial court.

51,320 (La. App. 2 Cir. 5/17/17), 223 So. 3d 614, *writ denied*, 2017-01251 (La. 10/27/17), 228 So. 3d 1230. A material fact is one that potentially ensures or precludes recovery, affects the ultimate success of the litigant, or determines the outcome of the dispute. *Hines, supra*; *Franklin, supra.*

The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1). When the motion for summary judgment is made and supported as provided in La. C.C.P. art. 966, the adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or other proper summary judgment evidence, must set forth specific facts showing that there is a genuine issue for trial. *Weaver v. City of Shreveport*, 52,407 (La. App. 2 Cir. 12/19/18), 261 So. 3d 1079.

Louisiana courts have adopted a duty-risk analysis in determining whether liability exists under the facts of a particular case. Under this analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to the appropriate standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal

4

cause of the plaintiff's injuries; and, (5) actual damages. *Bufkin v. Felipe's La., LLC,* 2014-0288 (La. 10/15/14), 171 So. 3d 851; *Flipping v. JWH Properties, LLC*, 50,648 (La. App. 2 Cir. 6/8/16), 196 So. 3d 149.

*Lowery's Motion for Summary Judgment*

In their first assignment of error, the Colemans assert the trial court erred by granting summary judgment in favor of Lowery. They argue multiple genuine issues of material fact exist that render summary judgment improper. Specifically, the Colemans claim material questions of fact remain regarding whether: 1) Lowery actually employed the operator of the Zamperla Mini-Jet (the name of the specific ride from which Nakhia fell); 2) Lowery is liable under a theory of apparent authority; 3) Lowery entered a joint venture with Crabtree and formed a partnership; and, 4) Lowery hired Crabtree as a subcontractor but is still liable because it retained control over Crabtree and knew or should have known about Crabtree's unsafe policies.

Lowery asserted in its motion for summary judgment and maintains on review that the Mini-Jet was at all times owned, operated, and controlled by Crabtree and, furthermore, that the ride operator was an employee of Crabtree. In support of its motion, Lowery submitted the affidavits of the company's owners, Willie and Tony Lowery. Both affiants testified Lowery never owned, controlled, had custody of, or exercised any supervision or any control, operational or otherwise, of the ride in question. They further stated no employee of Lowery ever exercised any supervision or any control, operational or otherwise, over the Mini-Jet.

The Colemans opposed Lowery's motion and submitted the following in support of their position: 1) the contract; 2) the transcript of La. C.C.P. art. 1442 deposition testimony of Anthony Lowery, Lowery's corporate

5

representative; 3) the transcript of La. C.C.P. art. 1442 deposition testimony of Christopher Giordano, State Fair's corporate representative; and, 4) the transcript of La. C.C.P. art. 1442 deposition testimony of Patrick Crabtree, Crabtree's corporate representative. Notably, both Anthony and Patrick testified regarding the agreement and relationship between Lowery and Crabtree. They explained the contract belonged to Lowery and that Lowery brought Crabtree in to help fulfill the contract. The two companies initially reached an agreement regarding which company would provide which rides (to avoid duplicates and share equally in rides generating more money). This resulted in each company providing approximately half the rides at the carnival. Accordingly, the two companies agreed to split equally the profits from the carnival. The two companies frequently work events together, and their standard arrangement is that each company set up, inspect, maintain, supervise, and operate its own rides with total autonomy from the other company. However, employees of both companies were outfitted in Lowery uniforms. Patrick provided the following explanation when asked why his employees were wearing Lowery T-shirts:

> Because it's not our contract. It's the Lowery Carnival contract. It's the Lowery Carnival. And so to have a uniform look in there, everybody wears Lowery shirts, and that's typical in the industry anywhere you go . . . . It is not our fair. It's Lowery's fair. It's Lowery's contract. It's his event. So he's branding his event with his stuff, but he's not branding us. They don't want to brand Crabtree in there because then that creates a different illusion.

Anthony and Patrick both testified the Mini-Jet was a Crabtree ride, and its operator was a Crabtree employee.

On appeal, the Colemans argue the information obtained in the recent depositions of Lowery and Crabtree regarding the legal relationship and

6

agreement between the two companies created a genuine issue of material fact as to whether or not Lowery should be held liable for Nakhia's injuries. We agree. The affidavits and depositions confirm, unequivocally, that the Mini-Jet was owned by Crabtree and at all times operated by a Crabtree employee. However, it is clear that while Crabtree and Lowery were responsible for setting up and operating their own rides, and Lowery was responsible for setting up and operating its rides, Lowery had overall responsibility for the carnival itself. Lowery's ultimate responsibility for the carnival arose out of the contract and also from the agreement, which notably entailed all Crabtree employees wearing Lowery shirts, because "it's the Lowery carnival," as characterized by Patrick. The Colemans assert several theories under which Lowery could potentially be held liable for Nakhia's injuries. We decline to make determinations regarding those specific theories but do find there is a genuine issue of material fact regarding the nature of Lowery's legal relationship with Crabtree and whether or not Lowery owed a duty to the Colemans and could be held liable, independently or vicariously through Crabtree, for its substandard conduct that contributed to the cause of the accident. Particularly, we note issues remain regarding the legal effect of the agreement which entailed Lowery and Crabtree working together in some form and sharing in the profits from that cooperation and also regarding the amount of control Lowery ultimately exercised or could have exercised over Crabtree. Accordingly, this assignment of error has merit, and summary judgment in favor of Lowery was improper.

*State Fair's Motion for Summary Judgment*

In their second assignment of error, the Colemans assert the trial court erred by granting summary judgment in favor of State Fair. They argue material questions of fact exist regarding State Fair's: independent negligence as the owner and promoter of the fair; voluntary assumption of a duty to ensure safety; and, assumption of a duty to ensure safety by contract.

State Fair asserted in its motion for summary judgment and maintains on appeal it did not own or operate any of the carnival rides and had no custody or control over the ride involved in the accident or the operator of the ride. In support of its motion, State Fair submitted the affidavit of Christopher Giordano, president of State Fair, who averred State Fair did not hire, fire, train, supervise, or have the right to control any carnival company employees who operated rides at the fair.

In support of their opposition to State Fair's motion for summary judgment, the Colemans provided the contract and the same deposition transcripts submitted in support of their opposition to Lowery's motion. The contract provided that State Fair agreed to the following three obligations:

> 1. Furnish sufficient locations upon its fairgrounds in Shreveport, Louisiana, for [Lowery] to erect its entire show consisting of riding devices, concessions, games and equipment.
>
> 2. Order all ride coupons and armbands and distribute to [Lowery] as needed but bill [Lowery] for costs of coupons and armbands.
>
> 3. Advertise and promote [Lowery's] show as [the] official carnival operation of the State Fair of Louisiana.

It further provided that Lowery, in turn, agreed to an enumerated 24 obligations, including:

1. Present its entire combination of shows, riding devices, concessions and games.

2. Submit an equipment list with contract[.]

3. Substitute rides on list only after approval of the manager of the State Fair of Louisiana.
. . .

23. Give to [State Fair] full censorship over all shows, rides, concessions and games; and should any of these be found unsatisfactory to local laws or to [State Fair], the offending show, ride, concession or game shall be closed by [Lowery] upon request of [State Fair].
. . .

[Lowery] agrees that each day and subsequent to any repair or maintenance shut down, before commencing operations of any amusement ride or attraction, [Lowery] shall cause each ride owner to conduct an inspection of, and submit to [State Fair] a complete manufacturer's operator/inspector manual check list for such ride.

In his deposition, Christopher explained the carnival is just one component of the state fair, in addition to a livestock show, rodeo, concessions, and other exhibits. Christopher and Anthony both stated the State Fire Marshal's office is responsible for regulating and overseeing carnival rides operating in Louisiana. Christopher further testified State Fair does not possess the expertise to oversee the safety guidelines of the carnival rides and instead relies on the carnival company with whom it contracts and the State Fire Marshal's office. State Fair likewise relies on the carnival company to hire, fire, and properly train its employees. Anthony testified State Fair did not operate any rides at the carnival but had control over the property and the ability to exercise control over Lowery's operation with regard to granting Lowery access to the property and shutting down its operation if State Fair deemed it to be operating in an unsafe manner. Both Christopher and Anthony confirmed there was an area at the fair called the

9

"Kiddie Corral," which was designated for the children's rides and set apart with fencing in order to keep young children away from the older crowd and smoking and alcohol. It was State Fair's request there be no smoking or alcohol in this area, and State Fair stationed one of its employees at the entrance to the Kiddie Corral area to monitor compliance. Furthermore, Patrick confirmed State Fair was not involved in the set-up or operation of the Mini-Jet or in the employment or supervision of the Mini-Jet operators. He testified Stair Fair had no control over Crabtree rides or operators.

On appeal, the Colemans claim the testimony elicited during the depositions establishes that genuine issues of material fact exist regarding whether State Fair's control and authority over all fair operations, including Lowery and all carnival rides, created a duty for State Fair to ensure the safety of fair patrons. We disagree.

In support of their argument, the Colemans rely on this court's previous opinion, *Lewis v. Pine Belt Multipurpose Cmty. Action Acquisition Agency, Inc.*, 48,880 (La. App. 2 Cir. 5/7/14), 139 So. 3d 562, *writs denied*, 2014-0988, 2014-1190 (La. 8/25/14), 147 So. 3d 1120, 1121, a case which involved both Lowery and State Fair as well. In *Lewis*, a young child was catastrophically injured when he was exiting a Lowery carnival ride at the state fair, another child gained access to the control panel and restarted the ride. There, the trial court did not err in denying State Fair's motion for summary judgment as the *Lewis* court reasoned:

> To say that State Fair had no responsibility for the operation of the rides does not alleviate its responsibility to ensure that all of the rides were safe from unauthorized tampering when the rides were in the "off" position. Accordingly, we conclude that genuine issues of material fact exist in this negligence case as to whether there is a causal connection between State Fair's duty

10

> to provide a safe premises and safe rides, and the injuries suffered by plaintiffs and their son.

*Id.* at 571.

Despite the Colemans' allegations and arguments, this case is distinguishable from *Lewis*, as those plaintiffs alleged State Fair failed to exercise reasonable care by allowing the use of a carnival ride without a safety switch to deenergize the control panels. Here, there was simply no evidence presented to support the argument that State Fair failed to provide a safe premises for the carnival or that its independent negligence was in any way a contributing cause of the accident. The Colemans allege the accident was caused by the ride operator's failure to properly secure Nakhia or timely stop the ride. That is simply not the case with State Fair, which was not involved in the operation or regulation of the carnival rides or the employment and training of the ride operators.

Instead, the case *sub judice* is more akin to *St. Pierre v. Frey Amusement*, 1993-0653 (La. App. 4 Cir. 3/29/94), 635 So. 2d 358, which held the owner of the property or event, who does not exercise control over a ride or employee, is not liable for injuries sustained on a ride. *See also*, *Lambert v. Pepsico*, 1996-0733 (La. App. 1 Cir. 8/6/97), 698 So. 2d 1031, *writ denied*, 1997-2272 (La. 9/19/97), 701 So. 2d 178; *Hauth v. Iacoponelli*, 251 La. 410, 204 So. 2d 767 (1967). In *St. Pierre*, a child sustained injuries on a ride at a church fair. Pursuant to the contract between the amusement company and the church, the amusement company agreed to provide and operate the carnival rides; the church agreed to furnish a suitable location, water, and police protection. In affirming the trial court, the *St. Pierre* court concluded:

11

> Frey Amusement, not the church, had exclusive control over the superslide and there is no rebuttal by [the plaintiff]. In view of the fact that the church had no control at all over the superslide, we believe that the church cannot be found liable for [the plaintiff's] injury.

*Id.*, at 360.

Similarly, the evidence here clearly shows State Fair was not exercising control over the carnival portion of the fair. There is no genuine issue regarding State Fair's independent negligence. The contract, affidavits submitted, and transcripts of the depositions leave no question of fact regarding State Fair's position as the host and promoter of the carnival and Lowery's position as its operator. As observed, the state fair has numerous attractions beyond the carnival—Lowery was unequivocally responsible for the carnival component of the fair. State Fair's only obligations to Lowery under the contract were to provide a location for the fair, order ride coupons and armbands, and promote advertising for the carnival. State Fair's right to exclude certain rides it deemed undesirable (whether due to safety features or perhaps an unsavory theme), and its efforts to keep the Kiddie Corral area free of alcohol and cigarette smoke simply do not rise to a level of control or assumption of duty that would create a genuine issue regarding its liability, whether independently or vicariously, for Nakhia's injuries. Accordingly, this assignment of error is without merit, and the trial court did not err in granting State Fair's motion for summary judgment.

### The Colemans' Motion to Amend and Supplement their Petition

In their third and final assignment of error, the Colemans assert the trial court erred by denying their motion for leave to amend and supplement their petition and by then issuing a ruling and judgment on matters not properly before the court. The Colemans assert their new petition was to set

12

out fault and causes of action discovered during the recently held depositions of the defendants. They claim that due to prolonged difficulty scheduling the depositions, defendants' motions for summary judgment were filed long before the Colemans were able to take the depositions and file the amended petition at issue. The Colemans claim that after denying their amendment, the trial court, when ruling on defendants' motions for summary judgment, improperly ruled on the new allegations and theories contained in the Colemans' amended petition. Thus, defendants' arguments were based solely on previous allegations and theories of liability asserted by the Colemans. The Colemans argue by denying their motion, then ruling on the new allegations it contained, the trial court deprived them of their right to be heard and due process. We disagree.

Louisiana C.C.P. art. 1151 provides:

A plaintiff may amend his petition without leave of court at any time before the answer thereto is served. He may be ordered to amend his petition under Articles 932 through 934. A defendant may amend his answer once without leave of court at any time within ten days after it has been served. Otherwise, the petition and answer may be amended only by leave of court or by written consent of the adverse party.

The law takes a liberal approach to allowing amended pleadings to promote the interests of justice. *Walton v. Burns,* 47,388 (La. App. 2 Cir. 1/16/13), 151 So. 3d 616. Amendment is generally allowed, provided the mover is acting in good faith, the amendment is not sought as a delaying tactic, the opponent will not be unduly prejudiced, and trial of the issues will not be unduly delayed. *Giron v. Housing Auth. of City of Opelousas,* 393 So. 2d 1267 (La.1981); *Bilyeu v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 50,049 (La. App. 2 Cir. 9/30/15), 184 So. 3d 69, *writ denied*, 2015-2277 (La. 2/19/16), 187 So. 3d 462. However, a trial court has broad discretion in

13

ruling on motions to amend pleadings, and a decision to accept or reject an amendment should not be disturbed on appeal absent abuse of that discretion. *Aymond v. Citizens Progressive Bank*, 52,623 (La. App. 2 Cir. 6/26/19), 277 So. 3d 477, *writ denied*, 2019-1200 (La. 10/15/19), 280 So. 3d 602.

Five years after their original petition was filed, the Colemans filed their first motion for leave to amend their petition, which was granted by the trial court. Their second motion for leave to amend was filed three days prior to the hearing on defendants' motions for summary judgment. At the hearing, it was established the trial court had not yet reviewed the Colemans' motion. Furthermore, the Colemans declared they had "left a couple of things out of that petition" and needed to "redo it again." Therefore, with anticipation the Colemans would file a third motion for leave to amend after making some corrections to their proposed amended petition, the trial court denied the Colemans' second motion for leave to amend. Though the motion to amend was denied, during the hearing, the Colemans proceeded to assert facts learned during the depositions and argued those facts required the denial of defendants' motions for summary judgment. The Colemans subsequently filed their third motion for leave to amend their petition 11 days after the summary judgment hearing. Their motion was denied.

In considering the broad discretion the trial court possessed when ruling on the Colemans' motion for leave to amend, we note the trial court had previously allowed the Colemans to amend their petition, which occurred five years after their original petition was filed. Furthermore, their second and third motions were sought ten years after their original petition

14

was filed—the third motion for leave to amend filed 11 days *after* the hearing on defendants' motions for summary judgment. Acknowledging the prolonged length of litigation in the case, the trial court did not abuse its discretion in denying the Colemans' motion. See *Aymond*, *supra*, where the trial court did not abuse its discretion by denying plaintiff's third amended and supplemental petition, noting the litigation had been ongoing for several years before plaintiffs attempted the filing and the proposed petition was extremely expansive. Additionally, despite the denial of the Colemans' motion for leave to amend, the trial court did not err by considering the depositions and the Colemans' arguments based on that testimony when ruling on defendants' motions for summary judgment. The Colemans submitted the deposition transcripts in support of their opposition to defendants' motions and asserted related arguments during the hearing; thus the trial court was free to consider all evidence presented. Accordingly, this assignment of error is without merit.

## CONCLUSION

For the foregoing reasons, we reverse the portion of the trial court's judgment granting summary judgment in favor of defendants, Lowery Carnival Company and T.H.E. Insurance Company, and the matter is remanded to the trial court for further proceedings. We affirm the portion of the trial court's judgment granting summary judgment in favor of defendant, State Fair of Louisiana, and also affirm the trial court's judgment denying plaintiffs' motion for leave to file an amended and supplemental petition. Costs of appeal are assessed two-thirds to plaintiffs, Emerson and Colette Coleman, individually and on behalf of their minor child, Nakhia Coleman,

and one-third to defendants, Lowery Carnival Company and T.H.E. Insurance Company.

**AFFIRMED IN PART; REVERSED IN PART AND REMANDED FOR FURTHER PROCEEDINGS.**